551 A.2d 354

Emmett Nepa, t/d/b/a Nepa's Mountain View Manor, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued October 6, 1988, before Judges BARRY and SMITH, and Senior Judge BARBIERI, sitting as a panel of three.

*Robert G. Delgreco, Jr., Dickie, McCamey & Chilcote, P.C.,* for petitioner.

*Howard Ulan,* Assistant Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, December 7, 1988:

Emmett Nepa t/d/b/a Nepa's Mountain View Manor (Petitioner) appeals an order of the Department of Public Welfare (DPW) denying his appeal from the revocation of his license to operate a personal care home.

Petitioner operated a thirty bed personal care home in Connellsville, Pennsylvania, from October of 1985 through February of 1988. Many of the home's residents came from state mental institutions.

By letter dated March 4, 1987, DPW informed Petitioner that it was revoking his license to operate the home pursuant to Sections 1026(b)(4) and (5) of the Pub-

lic Welfare Code (Code),[1] in light of charges by three former employees that Petitioner had abused residents. Petitioner appealed the revocation and a hearing was held in August of 1987, at which the three former employees testified.

Based on their testimony, the hearing examiner made findings concerning an incident between Petitioner, a seventy-four year old male resident, Albert M., and a female resident, Gertrude B. On November 24, 1986, Petitioner, in front of other residents and employees, grabbed Albert M. and unbuckled his belt causing his pants to fall. He then grabbed Gertrude B. and physically forced these two residents to kiss. Petitioner testified that this was to shame and humiliate Albert M. who had a history of masturbating in public.

The hearing examiner further found that on two occasions, Petitioner forced resident Elizabeth B. to remove toilet paper from the commode with her hand after she had urinated and defecated in it. Petitioner admitted this behavior but denied that there was fecal matter in the commode. He explained that this was his way of attempting to stop this resident's habit of filling the commode with toilet paper.

The hearing examiner specifically found that the testimony of three former employees was "far more credible than [Petitioner's]" and that the evidence supported their charges contained in DPW's Summary of Allega-

---

[1] Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§1026 (b)(4) and (5). These sections read in pertinent part:

    (b)   The department shall refuse to issue a license or shall revoke a license for any of the following reasons:

    . . . .

    (4)   Gross incompetence, negligence or misconduct in operating the facility;

    (5)   Mistreating or abusing individuals cared for in the facility.

tions, which is part of Exhibit C-1. This summary contains allegations of verbal abuse by Petitioner directed towards various residents as well as several incidents of physical abuse. As an example, Petitioner would on occasion throw food at two male residents at breakfast. Petitioner would also verbally abuse Mr. L., a resident who had irregular sleeping habits. One former employee testified that on the night Mr. L. passed away, she observed he was having difficulty breathing. She testified that at this time she observed Petitioner verbally abusing Mr. L. and accusing him of being a "fake" while attempting to feed him liquids.[2]

In an adjudication dated November 4, 1987, the hearing examiner recommended that Petitioner's appeal of the revocation of his license to operate a personal care home be denied. By way of an order dated November 10, 1987, DPW's Office of Hearings and Appeals adopted the hearing examiner's recommendation in its entirety.[3]

On appeal, Petitioner contends that DPW's findings of fact are not based on substantial evidence and even if they are, the incidents do not amount to abuse under the Code. Additionally, Petitioner maintains that the penalty of revocation is so excessive for the acts committed as to be an abuse of discretion on the part of DPW and a deprivation of his right to due process.[4]

---

[2] *See* Notes of Testimony from August 17, 1987, (N.T.) at 116-117.

[3] By order dated February 4, 1988, we issued a preliminary injunction prohibiting Petitioner from operating Nepa's Mountain View Manor or any other personal care home for adults as defined at Section 1001 of the Code, 62 P.S. §1001.

[4] We note that pursuant to Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, our scope of review is limited to determining whether DPW's findings are supported by substantial evidence, whether constitutional rights were violated or whether an error of law has been committed. *See Department of Health v.*

Petitioner takes issue with five findings out of forty-nine made by the hearing examiner. Finding of Fact No. 5, states that one former employee corroborated "some" of the abusive incidents which the first witness testified to. Petitioner complains that this fact is inadequate to sustaining a conclusion. When read in conjunction with Finding of Fact No. 4, it is clear from the record what incidents Finding No. 5 refers to.

Findings 9 and 43 refer to affidavits sworn to by the three former witnesses of incidents whereby Petitioner abused residents. Petitioner maintains that these findings are not based on substantial evidence because the affidavits were never admitted into evidence. However, a summary of the allegations contained in the affidavits was admitted into evidence and labeled "C-1".

Finding No. 9 simply states that the witnesses complained in the "affidavit of abuse" concerning mistreatment of John M. and that one of the former employees testified as to that abuse. The record clearly shows that the abuse of John M. was addressed in the Summary of Allegations and a witness testified directly as to this abuse.[5]

Finding No. 43 is just a statement that the three former employees made affidavits charging Petitioner with abuse. This fact was clearly testified to by the employees as well as the Boarding Home Licensure Program's regional supervisor.

---

*Brownsville Golden Age Nursing Home, Inc.*, 103 Pa. Commonwealth Ct. 449, 520 A.2d 926 (1987) *petition for allowance of appeal denied*, 515 Pa. 610, 529 A.2d 1083 (1987), *citing Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

[5] One former employee testified that she witnessed Petitioner punch John M. in the chest while giving him a shower and curse at him on occasion. N.T. at 34-35.

Petitioner also challenges Finding No. 47 which comes after findings on the Albert M. and Gertrude B. and Elizabeth M. incidents. This finding simply states that there is credible testimony by the former employees proving all other incidents of mistreatment described in the Summary of Allegations.

One last finding which Petitioner challenges as hearsay is Finding No. 49 which states that he surreptitiously taped employees' conversations. Although this was apparently the basis for awarding one of the former employees unemployment compensation, the finding is not hearsay as it is based on a prior admission by Petitioner.[6]

Petitioner also contests the hearing examiner's finding that the three former employees were credible. Petitioner attempted to impeach the three former employees by testimony from a resident and another employee that one of the former employees had jumped into bed with a patient at a Christmas party and another had taken a snapshot of a male resident while in the shower and placed a baby bottle and humiliating sign around the neck of another resident.

Both former employees denied that any of these unprofessional incidents occurred.[7] Further, as noted by the hearing examiner, even if these reprehensible acts had occurred, they are collateral matters which have no bearing on the witnesses' reputation for truthfulness and therefore may not be used for impeachment purposes. *See Downey v. Weston*, 451 Pa. 259, 301 A.2d 635 (1973). The alleged acts do not involve the same acts of abuse toward residents which Petitioner has

---

[6] *See* N.T. at 78.

[7] However, one of the three former employees admitted to bringing a sexual object into the home as a joke meant for one of the other employees. A resident testified that she saw the object.

been charged with and therefore do not tend to disprove DPW's evidence that Petitioner abused residents.

Petitioner next contends that DPW erred in concluding that he had engaged in mistreatment of residents in violation of Sections 1026(b)(4) and (5) of the Code. In support of this contention, Petitioner first maintains that the hearing examiner should not have disregarded the testimony of his witnesses who testified that they never saw any mistreatment of residents.[8] Petitioner elicited testimony from other employees, visitors, mental health employees and two residents that they never witnessed any abuse of residents by Petitioner.

Determining the credibility of witnesses in a provider appeal is the province of the Director of the Office of Hearings and Appeals as fact finder. *Northwestern Institute of Psychiatry v. Department of Public Welfare*, 99 Pa. Commonwealth Ct. 213, 513 A.2d 495 (1986). In adopting the hearing examiner's adjudication, the Director specifically found the testimony of DPW's witnesses as credible. Further, the testimony presented by Petitioner's witnesses that they did not see any abuse does not relate to those specific incidents in the Summary of Allegations. Therefore, it is irrelevant as to these charges.

Petitioner also maintains that Sections 1026(b)(4) and (5) of the Code do not provide a clear standard with which to measure misconduct or abuse. He contends

_____

[8] Petitioner also argues that the hearing examiner erred in holding that he could not partially withdraw a stipulation in the record to the Albert M. and Gertrude B. incident. Petitioner denied that he pulled Albert M.'s underpants down although initially stipulating to that version of the incident which appears in Exhibit C-1. Even without the stipulation, Petitioner's own admissions concerning this incident constitute abuse of both of these residents under the Code.

that his due process rights were violated because the Code permits DPW to define such terms. We disagree.

Due process only requires that the statute provide a "sufficiently definite warning as to the proscribed conduct when measured by *common understanding and practices.*" *Commonwealth v. Cohen,* 371 Pa. Superior Ct. 558, 562, 538 A.2d 582, 583 (1988) (emphasis in original), *citing Roth v. United States,* 354 U.S. 476, 491 (1957). Petitioner's actions as outlined in the hearing examiner's findings clearly constitute misconduct and abuse of residents under this standard.

Lastly, Petitioner argues that revocation of his license to operate a personal care home was an excessive penalty and an unconstitutional deprivation of property without due process.

We have held that even one isolated incident of physical abuse of a resident on the part of the individual in charge is cause for revoking a personal care home license. *Aaron's Boarding Home v. Department of Public Welfare,* 116 Pa. Commonwealth Ct. 210, 541 A.2d 63 (1988). The hearing examiner clearly found that Petitioner had engaged in acts of physical, mental and verbal abuse toward residents. Further, Petitioner's rights to due process were not violated as he was accorded notice and an opportunity to be heard.

We believe Petitioner's treatment of these residents as found by the hearing examiner to be truly disturbing. These residents were elderly and/or mentally incapacitated and wholly dependent on Petitioner while residing in his home. As residents, they are entitled to maintain their dignity and be cared for with respect, concern, and compassion.

Petitioner testified that he did not have adequate training to deal with the patients he received who suffered from mental problems. Petitioner's lack of training in this area is absolutely no excuse for the reprehensible

manner in which he treated various residents. Accordingly, DPW's order revoking Petitioner's license to operate a personal care home is affirmed.

### ORDER

AND NOW, this 7th day of December, 1988, the order of the Department of Public Welfare, Office of Hearings and Appeals, dated November 10, 1987, at Docket No. 34-87-013 is affirmed.