583 A.2d 515

**A.Y., Petitioner,**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, ALLEGHENY COUNTY CHILDREN & YOUTH SERVICES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1990.

Decided Dec. 4, 1990.

Petition for Allowance of Appeal Granted March 26, 1991.

---

Carol S. Mills, McCarthy, Bromall, Bender & Simon, Pittsburgh, for petitioner.

Carla F. Hobson, Asst. County Sol., with her, James A. Esler, Asst. County Sol., and James J. Dodaro, County Sol., Pittsburgh, for respondent.

Before McGINLEY and KELLEY, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

A.Y. petitions for review of an order of the Office of Hearings and Appeals of the Department of Public Welfare (DPW) that adopted the recommendation of a Hearing Officer and declined to expunge A.Y.'s name from the child abuse registry. The questions presented are (1) whether the statements of a small child concerning alleged sexual abuse may be admitted through the hearsay testimony of a parent, relating a private conversation with the child, (2) whether the testimony of a social worker who interviewed the child rose to the level of substantial evidence, where no videotape was made of the interview and the child's credibility was not evaluated by a psychologist, and (3) whether the totality of the evidence presented by Children and Youth Services of Allegheny County (CYS) constituted substantial evidence to support the indicated report and deny expungement.

A.Y. babysat the subject child, L.K., for the first time, on October 28, 1988. L.K., a girl, was then just over three years old. A.Y. is a twenty-three year old female college graduate with a degree in psychology and a desire to work with families in crisis. According to the testimony of L.K.'s

mother, on October 29, 1988, L.K. told her, in the course of an ordinary conversation concerning what she and the baby-sitter had done the night before, that A.Y. licked her on various parts of her body, including her vaginal area and buttocks. The next day L.K.'s mother had L.K. talk about that evening with her father present and she said the same thing. The parents reported the child's story to the Child Protective Services Department of CYS, which arranged for L.K. to be interviewed jointly by a social worker and a CYS caseworker at a hospital. L.K. told them the same story and she illustrated with anatomically correct dolls. The caseworker later interviewed A.Y., who denied the allegations and submitted a polygraph report and letters from character witnesses. As a result of this investigation CYS filed an indicated report of child abuse with the Child Line and Abuse Registry naming A.Y. as perpetrator. A.Y. requested expungement of that record, which was denied, and she appealed.

A DPW Hearing Officer conducted a hearing at which CYS presented the testimony of the caseworker who investigated the case, the social worker who interviewed L.K. and, over objection, the testimony of L.K.'s mother. A.Y. presented her own testimony, as well as that of a former supervisor with a background in investigating child abuse cases who had observed A.Y. working with children, the testimony and report of a person who had conducted a polygraph examination of A.Y. relating to this matter, and the testimony of A.Y.'s parents. She also introduced, without objection, reports from a therapist that she began seeing after these allegations arose.

The Hearing Officer admitted and gave weight to the testimony of the CYS caseworker, the social worker who had interviewed L.K. and L.K.'s mother, and concluded that the mother's recitation of the hearsay statements made to her by L.K. was admissible under this court's decision in *L.W.B. v. Sosnowski*, 117 Pa.Commonwealth Ct. 120, 543 A.2d 1241 (1988). The Officer gave no weight to the testimony of the polygraph operator or his report, because,

as the operator himself testified, such evidence is not subject to an objective standard of reliability. The Officer stated that she would not consider the testimony of the former supervisor or A.Y.'s parents, because they had no direct knowledge of the events of the night in question. She gave no weight to the reports of A.Y.'s therapist, stating that they presented conclusions without a basis. The Hearing Officer concluded that the record provided substantial evidence in support of the indicated report of child abuse, and she recommended that the appeal be denied. The Director of the Office of Hearings and Appeals adopted the recommendation in its entirety, and A.Y. has petitioned for review.[1]

A.Y. first contends that the Hearing Officer erred by admitting the hearsay testimony concerning L.K.'s statements to her mother. In *Sosnowski*, this court considered the problem of eliciting evidence relating to allegations of sexual abuse of small children in expungement cases. We concluded that the proper rule regarding admission of hearsay statements by a child was that adopted by the Pennsylvania legislature in 1986 at 42 Pa.C.S. § 5986, relating to admission of such statements in dependency proceedings in Juvenile Court:

A statement made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or court ruling, is admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile matters), involving that child or other members of that child's family, if a court finds that the time, content and circum-

1. This court's scope of review of a decision of the Office of Hearings and Appeals of DPW is limited to determining whether DPW's adjudication comports with the applicable law or violates constitutional rights or whether the necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Lehigh County Office of Children and Youth Services v. Department of Public Welfare*, 121 Pa.Commonwealth Ct. 74, 79–80, 550 A.2d 269, 271 (1988).

stances of this statement provide sufficient indicia of reliability.

We noted that, under the "time, content and circumstances" provision of Section 5986,

> Where a caseworker has recorded or carefully noted a child's lucid words, the hearing officer could find the declaration to be reliable. Moreover, the hearing officer could regard the caseworker witness, as professional person, to be disinterested and therefore reliable, in contrast to the possibly biased testimony of warring parents and others.

*Sosnowski*, 117 Pa.Commonwealth Ct. at 134, 543 A.2d at 1247. The Hearing Officer stated that she gave consideration and weight to the testimony of L.K.'s mother (and to the stipulation by A.Y. that the father's testimony would have been to the same effect) because this testimony was not from "warring parents". A.Y. contends that the Officer misinterpreted *Sosnowski* as requiring the exclusion of such testimony only in the context of a custody dispute. She asserts that L.K.'s mother may not reasonably be characterized as "disinterested", and, therefore, she was not a reliable source for the presentation of hearsay testimony.

Had the Officer's analysis been limited to the statement regarding the absence of warring parents, A.Y.'s point might be well taken. However, the Officer went on to state:

> The mother's testimony was that her daughter was giving her an account of her evening with A.Y. During that conversation the child said they had read stories and then said 'she licked me'. (N.T. 77). The mother's recounting of her conversation with the little girl was convincing that the child had initiated the statement of licking without any prompting and that her mother had tried to ask questions about this without alarming or upsetting her daughter. (N.T. 78 and 79).

The Officer's discussion clearly demonstrates that she credited the mother's testimony concerning the nature of the

conversation with L.K. Once the Officer made that credibility determination, then that evidence served as the basis for a conclusion that the time, content and circumstances of the child's statements provided sufficient indicia of reliability to permit the admission of those statements under Section 5986. Although *Sosnowski* did not mean that hearsay statements offered by a parent must be admitted unless the context is one of a bitter custody dispute, it also did not mean that statements made to a parent, as distinct from a professional person, may never be admitted. Compare the Superior Court's holding in a case decided before *Sosnowski, In re A.M.*, 365 Pa.Superior Ct. 516, 530 A.2d 430 (1987), in which case the testimony of a foster mother relating the hearsay statements of the children involved was the only evidence of sexual abuse, and the court held that the statements were properly admitted under Section 5986.

A.Y. next argues that the testimony of the social worker who interviewed the child at the hospital, Therthenia Lewis, should not be deemed to be of sufficient weight to constitute substantial evidence. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *J.S. v. Department of Public Welfare*, 125 Pa.Commonwealth Ct. 168, 171, 557 A.2d 801, 802 (1989). A.Y. questions the qualifications of Ms. Lewis, noting that she had been employed in her capacity of investigating allegations of sexual abuse at the hospital for only about two months at the time of the interview with L.K. However, Ms. Lewis testified that she had an associate degree in early childhood education, a bachelor's degree in home economics with a focus in child development and a master's degree from Ohio State University in human development and family relations and a master's degree in social work and was working on an M.P.H. at the University of Pittsburgh. She said she had been involved in social work for about sixteen years. (Reproduced Record 18.) She also testified that she had been involved in investigating so many cases of alleged child

abuse that she could not provide an accurate count of them. (R.R. 21.) In the absence of legislative or regulatory prescription of formal requirements regarding the education or training of professional investigators of abuse, we believe that a Hearing Officer has discretion to determine whether a particular investigator was qualified. In the present case, we find no abuse of that discretion in view of the witness' background.

A.Y. also challenges the manner in which the interview was conducted. Ms. Lewis described the procedure of the interview as involving an initial period of approximately fifteen minutes playing with L.K. in the presence of her parents to acclimate her to Ms. Lewis and the CYS caseworker. (R.R. 19, 24–25.) After the parents left, Ms. Lewis asked L.K. questions intended to examine her credibility. She said that L.K. accurately identified body parts, using a song that she knew. (R.R. 20.) L.K. also provided correct information concerning her grandparents and where they lived. (R.R. 33–34.) Ms. Lewis said she then proceeded to get some idea as to whether L.K. knew why she was there. (R.R. 20.) On cross-examination Ms. Lewis stated that L.K.'s mother indicated that they had talked with L.K. concerning the purpose of the visit. (R.R. 25.) After fifteen or twenty minutes Ms. Lewis, using L.K.'s word for vagina, asked her if she had ever been touched there, and L.K. said, "Yes." Ms. Lewis asked by whom and L.K. said that it was A. (R.R. 20.) On cross-examination Ms. Lewis conceded that she did not ask questions concerning appropriate forms of touching, such as would be involved in bathing or assisting a child at the toilet. (R.R. 27–28.) Then Ms. Lewis and the caseworker asked L.K. if she could show them how A. had touched her, using anatomically correct dolls, and L.K. licked the face, the arms and the vagina of the doll. (R.R. 20–21.) They then moved to a playhouse, and Ms. Lewis asked L.K. where in the house these events had taken place. L.K. said in the kitchen and in the living room. She also said that she and A. played together in the bathtub, with their clothes on. (R.R. 27–28.)

Ms. Lewis asked L.K. whether A. had removed her clothes and L.K. said, "No." She asked what kind of clothes L.K. had on and learned that she was wearing pajamas. She asked how the described conduct could have happened with L.K.'s pajamas on, and L.K. explained that A. zipped them down. (R.R. 33.) Ms. Lewis did not believe that children of L.K.'s age fabricate the kind of details that L.K. provided. (R.R. 22.) Based on L.K.'s detailed description of the alleged conduct, and her responses to the preliminary questions, Ms. Lewis concluded that L.K. was credible. (R.R. 33.)

A.Y. notes that L.K. had been made aware of the purpose of the interview. She characterizes the questioning concerning the touching of L.K.'s private parts and the request for a demonstration with the dolls as being leading and asserts that the lack of a videotape of the interview makes it impossible to determine if other questions were leading. She notes that Ms. Lewis' opinion that children of that age do not fabricate the kind of details L.K. described has been questioned in some scholarly literature and she asserts that even if the acts described actually took place the detailed description does not necessarily establish the child's credibility in terms of identifying the perpetrator. A.Y. observes that no further effort was made to establish L.K.'s credibility, for example by means of an interview with a qualified child psychologist. She notes that informed, caring parents might have led L.K. to make the statements she did without any malice toward A.Y. Taken as a whole, A.Y. asserts that Ms. Lewis' testimony should not be considered to be substantial evidence.

In view of the definition of substantial evidence quoted above, we must reject A.Y.'s arguments. Under *Sosnowski*, Ms. Lewis' recitation of what L.K. said to her was properly admitted. Certainly a videotape of the interview would have been preferable, and would have permitted the Hearing Officer a better opportunity to determine whether the questioning was leading. Nevertheless, *Sosnowski* does not require the use of a videotape for the admission of

statements made by a small child during an interview. We do not conclude that the questions related by Ms. Lewis were leading. *Sosnowski* did note that there is no need to rely on the caseworker witness' interpretation of gestures or demonstrations when the electronic means are available to assure that the hearing officer may view those for himself or herself. Although no tape was made of L.K.'s conduct with the dolls, this is not a case where the actions of the child with the dolls were ambiguous and subject to misinterpretation. Moreover, even if that evidence were excluded, the central evidence of L.K.'s story as related to the interviewers would remain. It is that evidence, properly admitted by the Hearing Officer and then credited by her, which forms the substantial evidence to support the indicated report of abuse. Although a psychologist's interview might have served to substantiate the finding of credibility made by the Officer, A.Y. has cited no legal requirement for such a procedure and we decline to impose one judicially.

Concerning the other evidence presented, A.Y. notes that the testimony of the CYS caseworker provided nothing more than that of Ms. Lewis, and should not independently constitute substantial evidence if Ms. Lewis' testimony did not. Our holding immediately above renders this point moot.

■ A.Y. argues that the evidence she presented should have had the effect of creating great doubt that the alleged conduct took place. Concerning the polygraph evidence she submitted, A.Y. concedes that Pennsylvania courts have consistently refused to admit such evidence for any purpose but notes that they have qualified that exclusion with statements that the courts should be alert to developments in the field and should admit such evidence when polygraphs reach a stage of trustworthiness and reliability comparable to that of other scientific tests that have aided the courts. *Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976); *Township of Silver Spring v. Thompson*, 90 Pa.Commonwealth Ct. 456, 496 A.2d 72 (1985). A.Y. argues

that the extensive experience of her operator witness establishes the trustworthiness of the results. We disagree. As the witness himself testified, the results of the test remain dependent upon the skill of the operator. (R.R. 45.) The Hearing Officer correctly concluded that A.Y. had not established that such tests are now governed by sufficient objective scientific standards of reliability so as to justify a departure from the existing law on this point.

■ As for the Hearing Officer's express disregard of the testimony of A.Y.'s parents and of her former supervisor, on the basis that none of them had any direct knowledge of the events of the evening in question, A.Y. notes that the Officer's position would effectively rule out any evidence on behalf of the alleged perpetrator because most allegations of this nature involve the presence of only one adult. We agree that this testimony, essentially that of character witnesses for A.Y., was not irrelevant to the question before the Hearing Officer and should have been considered. Nevertheless, the question before this court is whether substantial evidence existed to support the conclusion actually reached by the officer and adopted by DPW, not whether substantial evidence did exist or might have existed to support a contrary conclusion. Viewed in that light, the Hearing Officer's refusal to consider the character evidence was not reversible error.

■ Without objection, A.Y. presented two reports from a therapist that she began seeing in November of 1988. The first, after two one-hour visits, expressed the therapist's view that A.Y. did not commit any abuse that might have occurred. The second, after a year's worth of weekly sessions, confirmed the first and stated that the therapist had found no personality disorder in A.Y. of the type associated with abuse of small children. A.Y. contends that the Hearing Officer's characterization of the second report as presenting conclusions without a basis is refuted by the report itself, and she notes that most psychological or psychiatric testimony is based on the observations and analysis of the professional.

■ The Hearing Officer did not say that she did not consider this evidence (as she did with regard to the testimony of the former supervisor and A.Y.'s parents), but rather that she refused to give it any weight. In an administrative proceeding, the factfinder determines questions of the credibility of witnesses and of the weight of evidence. *See e.g., Nepa v. Department of Public Welfare,* 121 Pa.Commonwealth Ct. 532, 551 A.2d 354 (1988) (determination of credibility of witnesses in health care provider's appeal is the province of the Director of Office of Hearings and Appeals as factfinder); *McGraw Edison Power Systems v. Workmen's Compensation Appeal Board (Kuzior),* 127 Pa.Commonwealth Ct. 452, 561 A.2d 1327 (1989) (job of the referee as factfinder in a workers' compensation case is to consider the weight, credibility and competency of evidence, and he or she is not bound to accept as true even uncontroverted testimony). The Hearing Officer was free to give the report such weight as she saw fit.

■ Finally, A.Y. argues that because allegations of this nature typically involve conduct said to have occurred between a small child and an adult, with no other witnesses, the accused adult is often left with the impossible task of proving a negative, because the accused's self-interested denial is usually given little weight. She says that zeal to protect children must not be transformed into procedures that make it impossible to meet the allegations. She believes that more must be shown than has been shown in this case to support the filing of an indicated report of abuse.

We agree that the nature of allegations of sexual abuse of small children means that direct evidence in response is often not available. We are not unmindful of the severe effects that the filing of an indicated report of abuse can have on an individual. Nevertheless, an adjudication of a request for expungement is an administrative proceeding governed by the substantive and procedural law applicable to such proceedings. A denial of a request for expungement is not tantamount to a judgment of guilt of criminal conduct. Such a judgment, which threatens the liberty of

the accused and can result in a permanent criminal record, may be made only on proof beyond a reasonable doubt, and it is subject to federal constitutional procedural protections that are different from those applicable to this administrative proceeding. *See Idaho v. Wright,* —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). As noted above, the question here is whether substantial evidence existed to support the findings of the Hearing Officer. Once the evidence of L.K.'s testimony was properly received, even through hearsay, then that testimony provided such evidence as a reasonable mind might accept as adequate to support a conclusion that the report filed against A.Y. should not be expunged. Therefore, we affirm the order of the Director of the Office of Hearings and Appeals which adopted the recommendation of the Hearing Officer and denied expungement.

## ORDER

NOW, December 4, 1990, the order of the Director of the Office of Hearings and Appeals of the Department of Public Welfare, dated February 13, 1990, at Docket No. 21–89–084, is affirmed.

McGINLEY, Judge, dissenting.

I respectfully dissent.

The majority would apply our decision in *L.W.B. v. Sosnowski,* 117 Pa.Commonwealth Ct. 120, 543 A.2d 1241 (1988) to the present case to find that the testimony of L.K.'s mother was properly admitted into evidence before the Hearing Officer. In *Sosnowski,* the caseworker had recorded or carefully noted the child's lucid words. *Id.,* 117 Pa.Commonwealth Ct. at 134, 543 A.2d at 1247. In *Sosnowski* we stated: "the hearing officer could regard the *caseworker witness, as professional person, to be disinterested and therefore reliable,* in contrast to the possibly biased testimony of warring parents and others." *Id.* (Emphasis added.) Clearly, the finding of reliability in *Sosnowski* was based upon the caseworker being a professional and a

disinterested party. In the present case, the majority would extend the *Sosnowski* hearsay exception to statements made to L.K.'s mother, who cannot realistically be considered a disinterested party.

With regard to L.K.'s statements made to the case worker and social worker, I agree with the learned majority that the time, content, and circumstances of the statements provide sufficient indicia of reliability. However, in her decision, the Hearing Officer stated that "[t]he testimony of the mother and the stipulation to the testimony of the father are given weight and considered as this testimony is not from 'warring parents.'" Hearing Officer's Decision, dated February 13, 1990 at 5. Whether the hearsay testimony comes from parents involved in a dispute is not the test outlined in *Sosnowski*. In *Sosnowski* a premium was placed upon the experience, training, and education of the caseworker and the caseworker's disinterested role. Further deviation from the rules of evidence endangers the fairness of these emotionally charged proceedings.

Accordingly, I would reverse.