**YORK COUNTY CHILDREN AND YOUTH SERVICES, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 14, 1995.

Decided Oct. 18, 1995.

Publication Ordered Dec. 4, 1995.

Wanda D. Neuhaus, for petitioner.

Myra W. Sacks, Assistant Counsel, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

York County Children and Youth Services (CYS) petitions for review of the October 31, 1994 order and March 1, 1995 final order of the Department of Public Welfare, Office of Hearings and Appeals (DPW), directing the expungement from the statewide central register of two indicated reports of child sexual abuse, pursuant to the request of the alleged perpetrator. We affirm.

■ Pursuant to the Child Protective Services Law, 23 Pa.C.S. § 6303, an indicated report is made if an investigation by the child protective service determines that substantial evidence of alleged abuse exists based on its investigation, the available medical evidence, or an admission of the acts of abuse by the child's parent or person responsible for the child's welfare. The issue before us is whether DPW erred in determining that the indicated reports are not supported by substantial evidence.[1]

### Background

■ CYS recorded two incidents of alleged sexual abuse involving the alleged perpetrator, J.D., and his three year old daughter, K.D, at 21–92–064, Report # 67–07315 and 21–92–129, Report # 67–07499, respectively. J.D. sought to expunge these reports. The Secretary of DPW denied his request. J.D. appealed. The Hearing Officer granted consolidation of the two cases. Following a hearing, the Hearing Officer issued an Adjudication and Recommendation that J.D.'s appeal be sustained. By order of October 31, 1994, DPW adopted the Recommendation of the Hearing Officer in its entirety. After reconsideration, by order of March 1, 1995, DPW upheld its October 31, 1994 order.[2]

The facts as found by DPW are summarized as follows. On or about September 19, 1991, CYS received a report that J.D. had allegedly touched K.D.'s sexual organs. This and a subsequent incident in February 1992 were the subject of the indicated reports. J.D. and the child's mother, P.D., were separated at the time. The parents were involved in a custody dispute concerning K.D. and her older sister, S.D.. There is a dispute as to when the first allegation was made and to whom. There was no medical evidence showing that K.D. was sexually abused.

Robert Matthews, a counselor with CYS and Rape & Victims Assistance Center, testified that he met K.D. when he was counseling her sister earlier in 1991 for an unrelated incident of sexual abuse. DPW stated that there were no notes from which he sought to testify. DPW also stated that the testimony of both Cynthia Cox, a psychologist, and

---

1. This Court must affirm the adjudication of the Office of Hearings and Appeals unless we find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. *G.S. v. Department of Public Welfare,* 104 Pa. Cmwlth. 84, 521 A.2d 87 (1987).

2. Although not briefed or argued by either party, we note that the docket reflects an appeal from DPW's October 31, 1994 order rather than from DPW's March 1, 1995 order on reconsideration as required under Pa.R.A.P. 1701(b)(3). In the interest of judicial economy, we will treat this as an appeal of DPW's final order following reconsideration.

Julie Conant, the caseworker involved in the investigation, was flawed. DPW stated that Cox did not see K.D. until after the first report was determined to be "indicated." DPW stated that Conant, who interviewed K.D. and her father, had no testimony as to her training or qualifications on the record.

The paternal grandparents of K.D. were always around when J.D. visited his daughters; at no time was he ever left alone with K.D. at their home. DPW noted that, although CYS had the capability of videotaping at its office, it did not do so. Dr. Gary Glass, an expert witness and psychiatrist, determined that J.D. did not abuse his daughter. Dr. Glass's observations were shared by Dr. Doris Tinker, a psychologist, who was originally retained by the mother, P.D., in her custody case. Further, DPW also found the father's denial of the allegations to be extremely credible.

DPW ordered the expungement of the reports based on the lack of evidence that sexual abuse had occurred. Specifically, DPW determined that CYS had presented only hearsay evidence from the child, who did not testify, in support of the indicated reports. DPW determined that there was no admissible corroborative evidence that the child had suffered sexual abuse. Therefore, relying on the guidelines set forth in *A.Y. v. Department of Public Welfare*, 537 Pa. 116, 641 A.2d 1148 (1994), DPW determined that CYS had not met its burden of demonstrating that substantial evidence supports its indicated reports.

On appeal to this Court, CYS contends that the new standards set forth in *A.Y.* are not applicable to this case because CYS's investigation as well as DPW's hearing had concluded before *A.Y.* was decided. CYS contends that under the existing case law, *L.W.B. v. Sosnowski*, 117 Pa.Cmwlth. 120, 543 A.2d 1241 (1988), hearsay evidence of the child victim, alone, can support a report of abuse. In the alternative, CYS argues that the record contains substantial corroborative evidence of the child's account of the alleged abuse. Further, CYS argues that certain findings of fact misinterpret the relevant testimony and are not supported by substantial evidence. Additionally, CYS asserts that, because the Hearing Officer who rendered the adjudication made credibility determinations based solely on the transcript, those credibility determinations should have been made in favor of CYS, the party with the burden of proof.

DPW contends that, under the applicable standards set forth in *A.Y.*, hearsay cannot corroborate hearsay. DPW argues that Cox's psychological evidence was based on hearsay and, therefore, does not provide corroboration independent of hearsay as required by *A.Y..* DPW also contends that it was proper for the hearing examiner to make credibility determinations of witnesses that he did not see or hear. Intervenor J.D. additionally argues that CYS's hearsay evidence did not even meet the indicia of reliability required for admissibility under *Sosnowski* and does not, otherwise, constitute substantial evidence.

## Discussion

■ The agency bears the burden of proof in an appeal from the denial of an expungement request. 23 Pa.C.S. § 6341; *G.S. v. Department of Public Welfare*, 104 Pa.Cmwlth. 84, 521 A.2d 87 (1987). The agency must establish, by substantial evidence, that the report is accurate. *Id.* "Evidence is substantial where it so preponderates in favor of a conclusion that it outweighs, in the mind of the factfinder, any inconsistent evidence and reasonable inferences drawn therefrom." *Id.* 521 A.2d at 90.

In *Sosnowski*, the Commonwealth Court determined that in expungement hearings, it is proper for hearing officers to base their decisions solely on the hearsay testimony of family members and experts. In *A.Y.*, the Supreme Court determined that more is required. The Supreme Court, therefore, set forth the following guidelines:

1. Hearsay testimony of a child victim will be admitted in accordance with the standards set forth in 42 Pa.C.S. § 5986, and this rule shall be applied to permit the testimony of the victim's parents and other family members as well as those professionals charged with investigating incidents of child abuse;

2. Hearsay testimony in conjunction with admissible corroborative evidence of the act(s) in question can *in toto* constitute substantial evidence which will satisfy the Agency's burden to justify a conclusion of abuse.

3. However, *uncorroborated* hearsay cannot satisfy the Agency's burden unless it comports with the following requirements:

a) the statement was accurately recorded by audio or visual equipment;

b) the audio-visual record discloses the identity and at all times included the images and/or voices of all individuals present during the interview of the minor; and

c) the statement was not made in response to questioning calculated to lead the minor to make a particular statement and was not the product of improper suggestion.

537 Pa. at 126, 641 A.2d at 1153. Under 42 Pa.C.S. § 5986, which specifically relates to dependency proceedings, a statement by a child, not otherwise admissible, is admissible if the court finds that the time, content and circumstances of this statement provide sufficient indicia of reliability.

■ Although CYS contends that the *Sosnowski* rule applies here, the instant case clearly was pending at the time of the *A.Y.* decision. It is well established that decisions announcing changes in the law are applied retroactively unless a court limits the effect of the change; litigants have a right to rely on the change, especially if they have a suit pending at the time the change is announced. *McHugh v. Litvin, Blumberg, Matusow & Young,* 525 Pa. 1, 10, 574 A.2d 1040, 1044. (1990). The Supreme Court did not limit the effect of its ruling in *A.Y.* to future actions and, in fact, applied its ruling to the facts of that case. DPW, therefore, properly applied the standards set forth in *A.Y.* to this case.

Thus, applying *A.Y.* here, where there was no audio or visual recording of the interviews with K.D, we first review the record to determine whether there was any admissible corroborative evidence of K.D.'s out-of-court statements. CYS points to the testimony of K.D.'s maternal grandmother, Judy C.; the counselor, Matthews; and the psychologist,

Cox, to corroborate the testimony of the caseworker, Conant, as to the child's account of the alleged abuse.

The Supreme Court indicated in *A.Y.,* however, that hearsay does not constitute independent corroborative evidence of hearsay. In *A.Y.,* the evidence presented on behalf of the agency consisted of the testimony of the agency's caseworker, a social worker, and the victim's mother. The mother and the caseworker testified as to the child's account of the alleged abuse. The social worker, with considerable experience in child abuse cases, interviewed the child and determined that the child was credible. *See A.Y. v. Department of Public Welfare, Allegheny County Children & Youth Services,* 136 Pa.Cmwlth. 451, 583 A.2d 515 (1990). The Supreme Court summarily stated that the agency had not produced any independent corroborating evidence of the caseworker's hearsay testimony.

■ Here, the maternal grandmother, Judy C., merely recounted the child's out-of-court statements pertaining to the alleged abuse. (Original Record, Hearing of June 17, 1993, N.T. at 295–5.) Following *A.Y.,* we conclude that Judy C.'s testimony does not constitute independent corroborative evidence of the child's out-of-court statements.

■ Counsellor Matthews testified that, based on his experience with sexual abuse cases, in his opinion, K.D.'s disclosures and accompanying actions indicated sexual abuse. (Original Record, Hearing of April 22, 1993, N.T. at 20–40.) DPW noted that Matthews had no notes, relating to his observations, from which he sought to testify and concluded that his testimony was inadmissible. Indeed, the record shows that Matthews kept no record of his therapy sessions with K.D. and had difficulty recalling specific dates, such as when K.D. first alleged that she had been abused by her father. We, thus, find no error in DPW's determination that Matthews' testimony lacked the indicia of reliability required for admissibility under 42 Pa. C.S. § 5986.

Psychologist Cox testified that she instituted therapy with K.D. due to her claim of

sexual abuse, but that she did not assume that K.D. had, in fact, been sexually abused. (Original Record, Hearing of April 22, 1993, N.T. at 114.) Rather, Cox stated that she formed her opinion, that K.D. had been sexually abused by J.D., based on psychological tests and play therapy with the child. (N.T. at 115.) Although *A.Y.* does not preclude the use of expert psychological testimony, DPW rejected Cox's opinion, calling it "flawed." In reaching its conclusion on the merits, DPW implicitly found credible and persuasive the contradictory testimony of both J.D., denying the incidents, and Dr. Glass, opining that J.D. did not abuse the child.

◼ We, therefore, review the record to determine whether substantial evidence supports DPW's findings. The record shows that J.D. testified that he never touched K.D. in a sexual manner. (Original Record, Hearing of August 26, 1993, N.T. at 572.) Dr. Glass, in cooperation with Dr. Tinker, who was engaged by the mother, P.D., conducted an investigative evaluation of K.D.'s allegations. (Original Record, Hearing of June 17, 1993, N.T. at 342.) In contrast to the CYS methodology, Dr. Glass and Dr. Tinker evaluated each family member, including P.D. and J.D. (N.T. at 346, 350.) Both doctors came to the conclusion that J.D. did not sexually abuse K.D. (N.T. at 415–16.)

Dr. Glass considered numerous factors in reaching his conclusion. He found significant the fact that both K.D. and S.D. exhibited emotional problems long before the allegations of sexual abuse arose. (N.T. at 416.) He noted that K.D. appeared to be pleased to see her father during his visits, which behavior is not consistent with a child who has been forcibly abused by her father. (N.T. at 380–83.) Dr. Glass indicated that K.D. may have been influenced by her older sister, S.D., who had previously been sexually abused by a cousin. (N.T. at 397.) Additionally, Dr. Glass found no indication that J.D. had a personality predisposed to child molestation or pedophilia. (N.T. at 404.) Dr. Glass opined that P.D., the mother, is very manipulative and controlling. (N.T. at 417.) He found significant the fact that K.D.'s allegations of sexual abuse arose one day after

J.D. brought suit to challenge the existing child custody agreement. (N.T. at 371.)

◼ Based on our review of the record, we conclude that DPW did not err in determining that the indicated reports of abuse were not founded upon substantial evidence.

◼ In reaching our conclusion, we reject CYS's argument that the Hearing Officer improperly made credibility determinations based solely on the transcript. The Office of Hearings and Appeals, not the Hearing Officer, is the ultimate fact-finder in expungement proceedings. *R. v. Department of Public Welfare*, 535 Pa. 440, 636 A.2d 142 (1994). Therefore, as declared by the Supreme Court, "it is of no moment that the hearing examiner who issued the Adjudication and Recommendation did not hear the testimony given during the … hearings." *Id.* at 447, 636 A.2d at 145.

Accordingly, we affirm the order of DPW directing expungement of the subject reports.

### *ORDER*

**AND NOW,** this 18th day of October, 1995, the order of the Department of Public Welfare, dated March 1, 1995, is hereby affirmed.