**L.A.J., Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1999.
Decided March 19, 1999.

Carol L. Mills McCarthy, Pittsburgh, for petitioner.

Amy Wilson and Alexis Samulski, Pittsburgh, for respondent.

Before DOYLE, J., LEADBETTER, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Petitioner, L.A.J., appeals from an order of the Department of Public Welfare (DPW), Office of Hearings and Appeals (OHA), which denied L.A.J.'s request to have an indicated report of child abuse expunged.

L.A.J. is the biological mother of L, who, along with a brother and a sister, were born on October 18, 1983. L.A.J. is a single parent with a responsible job and, at the time of the incident, May 8, 1997, was enrolled in a Master's Program at Duquesne University. L.A.J. is divorced from L's father, although he is frequently permitted to visit the children at home to minimize the impact of his absence.

By all accounts, L is a difficult child. During the school year prior to the incident, L frequently cut classes and got into fights at school. At home, L also stole various objects from L.A.J.'s room, including her ATM card which she used to withdraw several hundred dollars from L.A.J.'s bank account. L's stealing forced L.A.J. to place a lock on her bedroom door to keep L out when L.A.J. was not at home. L.A.J. frequently attempted to discipline L and, periodically, during arguments, L would threaten L.A.J. by stating that, if L did not get her way, she would call Children and Youth Services (CYS) and report L.A.J. as a child abuser.

On May 7, 1997, the day prior to the incident, L, then thirteen years old, went into L.A.J.'s room and removed, without permission, L.A.J.'s portable C.D. player and took it to school with her. During the course of the day, however, the player was stolen. The following morning, L.A.J. confronted L about the C.D. player; L denied taking it, and an argument ensued. During the course of the argument, L picked up a baseball bat and came at L.A.J. After L.A.J. took the bat away from L, L.A.J. attempted to swat L on the buttocks with a belt, but hit her several times on the upper leg instead, leaving six welts on L's leg. Following the incident, L went into the family room to watch television, refusing to go to school that day. L.A.J. instructed L to go to school, and, after a second argument, L left the house, walked up a hill and boarded the school bus.

When L reached school, she was crying, apparently because she was upset about the incident that had occurred prior to her leaving home in the morning. After concerned students asked her what had happened, she was taken to a teacher and subsequently sent to the school nurse. After examining L, the nurse contacted CYS who sent a caseworker to the school to interview L and her two siblings. Later, the caseworker also interviewed L.A.J. who admitted striking L. As a result of her investigation, the CYS caseworker filed a form documenting an indicated

report of child abuse.[1] L.A.J. subsequently sought expunction of the indicated report, and a hearing was held on December 5, 1997.

At the hearing, DPW presented the testimony of Ms. Terry Barlack, the caseworker who interview L and L.A.J. after the incident. Ms. Barlack testified that, when she interviewed L, L told her that the welts hurt, but were feeling better. Ms. Barlack also stated that, four hours after the injury, she observed the welts on L's leg.

In addition, DPW presented the testimony of Mary Kay Goyda, the school nurse at L's school. Ms. Goyda testified that L told her that the welts "hurt a lot." Ms. Goyda conceded, however, that her examination of L revealed no bruises, abrasions or bleeding and that, following the examination, she sent L back to class. Ms. Goyda noted that she did not believe that the child needed any further medical attention.

L and L.A.J. both testified at the hearing. L admitted that, on several prior occasions, she had attacked L.A.J. As to the severity of the injury, L stated that the welts hurt for approximately an hour to an hour and a half, then the pain died away. She also noted that, when she went to show her friends the welts after school, there were none there and, that evening, she also could not see any marks on her legs.

L.A.J. testified that she initially attempts to discipline her children by yelling at them, grounding them or taking away other privileges. On some occasions, however, she does use a belt to discipline the children by hitting them on the buttocks. On May 8, 1997, L.A.J. stated that, when she attempted to strike L on the buttocks, L curled up on the kitchen floor in a fetal position, put her legs up and began kicking L.A.J. At that point, L.A.J. struck her several times with the belt.

On June 23, 1998, the hearing examiner issued his recommendation, concluding that the indicated report of abuse should not be expunged. Specifically, the hearing examiner concluded that the Commonwealth had established that L.A.J. beat L on the day in question, that, as a result of this beating, L experienced severe pain, and the hearing examiner concluded that L.A.J. presented no mitigating reasons for this conduct. On July 14, 1998, OHA adopted the hearing examiner's report in its entirety, and this appeal by L.A.J. followed.

On appeal,[2] L.A.J. argues that DPW failed to carry its burden of demonstrating that her conduct constituted child abuse.

Parents are not prohibited from using corporal punishment to discipline their children. In *Boland v. Leska*, 308 Pa.Super. 169, 454 A.2d 75 (1982), the Superior Court noted that parents may use corporal punishment as a means of discipline. The *Boland* Court, however, noted that corporal punishment may not be used if it is designed or known to create a substantial risk of death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation. *Id.* The current statutory guidelines which are contained in the Child Protective Services Law (Law), 23 Pa.C.S. §§6301–6385, evidence much of the same prohibitions against excessive punishment as the *Boland* Court indicated. Specifically, according to Section 6303 of the Law, the term "child abuse" includes:

> Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age.

23 Pa.C.S. §6303(b)(1)(i). Likewise, Section 6303 also defines the term "serious physical injury" as any injury that:

> (1) causes a child severe pain; or

---

**1.** Pursuant to 23 Pa.C.S. §6303, an indicated report of child abuse is

> A child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:
> (1) Available medical evidence.
> (2) The child protective services investigation.

> (3) An admission of the acts of abuse by the perpetrator.

**2.** Our standard of review in this matter is limited to determining whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence. *E.D. v. Department of Public Welfare*, 719 A.2d 384 (Pa. Cmwlth.1998).

(2) significantly impairs a child's physical functioning, either temporarily or permanently.

23 Pa.C.S. §6303(a). CYS bears the burden of proof in an expungement case. *York County Children and Youth Services v. Department of Public Welfare*, 668 A.2d 185 (Pa.Cmwlth.1995). To discharge this burden, CYS must show by evidence which outweighs any contrary evidence that L.A.J.'s actions constituted child abuse. *Id.*

■ In the present case, it is clear that L did not experience any temporary or permanent impairment of her physical functioning as the result of the discipline; indeed, she was able to go to school immediately following the incident. Likewise, L.A.J.'s intent to strike the child on the buttocks with the belt is clear. Accordingly, the case turns upon whether or not L experienced severe pain.

In *Appeal of E.S.*, 82 Pa.Cmwlth. 168, 474 A.2d 432 (1984), we examined a similar issue. In *E.S.*, a father struck his son several times with a belt to administer corporal punishment. Although the father intended to strike the child on the buttocks, he struck the child on the back when the child moved to avoid the punishment. Upon learning of the discipline, E.S.'s mother, who was separated from his father and had picked up the child after his visit with his father, took the child to a hospital where he was examined by a doctor who found a raised welt on E.S.'s back. Like the present case, there was no bleeding or abrasion.

Based upon the doctor's examination, the doctor contacted CYS which, following an investigation, filed a report of indicated child abuse. Following a hearing, the report was expunged, and CYS appealed that decision to this Court. On appeal, we affirmed DPW's decision, concluding that the record, including the child's testimony, established that the child did not experience severe pain.

Conversely, in *J.S. v. Department of Public Welfare*, 129 Pa.Cmwlth. 382, 565 A.2d 862 (1989), we upheld a denial of expungement. In *J.S.*, the father used his hand to spank his child as punishment. Following this incident, the child, who was only five years old, was taken to a local hospital emergency room where an examination revealed that she had bruises all over her buttocks. At an interview after the incident, the child stated that her bruises hurt a lot, and the CYS investigator documented the fact that the child could not sit easily. We concluded that the punishment inflicted caused severe bodily injury.

In the present case, L, who was 13 years old at the time of the incident, testified that, initially, the welts hurt, but both the pain and the welts disappeared during the course of the school day to the point that, at evening time, L had no pain and could not see any welts on her legs. Likewise, although Ms. Goyda testified that, shortly after the incident, L continued to experience some discomfort, unlike the children in both *J.S.* and *E.S.*, Ms. Goyda did not seek emergency treatment and did not administer any further treatment to L because she did not believe that any medical treatment was warranted. Accordingly, based upon the fact that L's welts disappeared relatively soon after the incident, the fact that her functioning was not impaired at all by the incident and the fact that Ms. Goyda, the school nurse who examined L, did not believe that further medical treatment of any kind was warranted, we believe that DPW failed to establish that L suffered severe pain in the present case.

In reversing DPW's conclusion to deny the expungement of L.A.J.'s record, we do not wish to minimize child abuse, its impact on children, or the fact that, in this case, the child did experience some discomfort and pain. At the core of even accepted degrees of corporal punishment, for better or worse, is some degree of pain. By its very nature, pain is a subjective feeling, and what is painful to one child may not bother another. Therefore, today's decision should not be construed as establishing a bright-line test for what does or does not constitute severe pain. Although there are clearly some degrees of pain and punishment that no child, young or old, should be required to endure, there are also other punishments on which reasonable minds may differ as to the pro-

portionality or as to the severity of the pain inflicted. Accordingly, the Court, as it has done in the past, must examine the issue on a case-by-case basis. Based upon all the facts presented in this case, we do not believe that DPW carried its burden of demonstrating that L experienced severe pain.

Reversed.

*ORDER*

NOW, March 19, 1999, the order of the Department of Public Welfare in the above-captioned matter is hereby reversed.