P.R., Appellee

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, OFFICE OF HEARINGS AND APPEALS; and, City of Philadelphia, Department of Human Services, Appellants.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 2001.
Decided July 16, 2002.
Reargument Denied Sept. 6, 2002.

Mary Cornelia Walsh, Philadelphia, for appellant, Com., DPW.

Harry S. Tischler, Philadelphia, for appellant amicus curiae, School Dist. of Phila.

Eleanor N. Ewing, Philadelphia, for appellant amicus curiae, Juvenile Law Center.

Elizabeth A. Ensminger, Terrence F. McVerry, Pittsburgh, for appellant amicus curiae, Allegheny Co. Office of Children, Youth & Families.

Nadia T. Hewka, Philadelphia, for appellee, P.R.

Louis S. Rulli, Philadelphia, Terry L. Fromson, for appellee amicus curiae, Women Law Project.

Gail Karen Lopez Henriquez, Philadelphia, for appellee amicus curiae, Nat. Union of Hosp. and Health Care Employees.

Elise Michelle Bruhl, Philadelphia, for intervenor, City of Philadelphia, DHS.

Before ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION*

Justice CAPPY.

This appeal arises from the denial of a request for expungement, pursuant to the terms set forth in the Child Protective Services Act, 23 Pa.C.S.A. § 6301, 6341 (hereinafter the "Act"). It presents the question of what standard should apply where a child experiences a serious injury resulting from an incident of corporal punishment and a determination must be made as to whether the injury resulted from abuse or accident. The Department of Public Welfare (hereinafter "DPW") denied the expungement, applying a foreseeability standard and concluding that the injury resulted from abuse. The Commonwealth Court reversed the order of the DPW, finding that foreseeability alone was an insufficient basis to sustain a conclusion that the injury resulted from abuse rather than an accident. Although we do not endorse the standard articulated by the Commonwealth Court in this case, for the reasons that follow we affirm the decision granting the expungement.

Child abuse occurs where the child suffers a serious injury that cannot be explained as accidental. 23 Pa.C.S.A. § 6303(b). On May 26, 1990, an "indicated report" of child abuse was filed, naming Appellee as the perpetrator. An "indicated report" of child abuse is made by the investigating agency when it determines that substantial evidence of the alleged abuse exists based on any of the following: available medical records, the child protective services investigation, or an admission of abuse by the perpetrator. 23 Pa.C.S.A. § 6303. The indicated report is then submitted to the statewide register of child abuse. 23 Pa.C.S.A. §§ 6331, 6338.

The underlying factual premise for the indicated report in this case was the hospitalization of Appellee's daughter, D.N., for an injury to her eye. Appellee requested

expunction of the report on August 22, 1996. A request to expunge a record maintained under the Act may be made at any time. 23 Pa.C.S.A. § 6341. At an expungement hearing the agency that filed the report of abuse bears the burden of establishing by substantial evidence that the report is accurate. *M.R.F. v. Department of Public Welfare*, 141 Pa.Cmwlth. 146, 595 A.2d 644 (1991); 23 Pa.C.S.A. § 6341(c). An expungement may be granted upon good cause shown. 23 Pa. C.S.A. § 6341(a)(1).

On September 9, 1997, the DPW, Office of Hearings and Appeals, convened a hearing on the expungement, wherein the following facts were adduced. Appellee is the mother of D.N. (Hearing Transcript, hereinafter "H.T." at 6). On April 16, 1990, Appellee used a belt to administer corporal punishment to D.N. when she found D.N. writing on the walls of the apartment. (H.T. at 52). D.N. was six years of age at the time. D.N. attempted to evade the blows of the belt. As D.N. was running away the belt struck her in the eye. (H.T. at 53). She screamed that her eye hurt and Appellee immediately attended to D.N.'s injury. (H.T. at 60). When asked by the Hearing Examiner what specifically hit her in the eye, D.N. responded: "I don't know, a belt buckle, I don't know. I don't remember." (H.T. at 54). D.N. described the injury to her eye as follows: "It's like how you rub your— you rub your finger in your eye. It's like a burning instant.... Yeah, that's how it feels like, like after you get finished rubbing it, like it's itching. And it's like——it itches, you know." (H.T. at 55–6)

In addition to D.N., the only other witness presented at the hearing was Ms. Wilson, a DPW social worker. Ms. Wilson initially investigated the matter and filed

the report of indicated abuse. The testimony of Ms. Wilson was limited to reading the reports she had prepared and filed in April and May of 1990, and describing her usual course of action when investigating reports of child abuse. Ms. Wilson had no independent recollection of the facts of this case. (H.T. at 13).

The reports relied upon by Ms. Wilson were submitted into evidence at the hearing as Department of Human Services exhibits 1 and 2. Exhibit 1 contains the initial information obtained by Ms. Wilson when the report of suspected child abuse was made to DPW. Exhibit 2 summarizes the additional information the investigator discovered; it closes with the conclusions and recommendations of Ms. Wilson. The reports reveal that Appellee took D.N. to a clinic three days after the initial incident, when D.N. complained of discomfort in her eye. At some time after the clinic visit, Appellee took D.N. to the Wills Eye Hospital in Philadelphia, where surgery was performed to remove blood accumulated in the eye. The diagnosis noted in the report is hypheremia.[1]

The report also indicated that Appellee admitted to the facts leading to the injury. Appellee responded with concern for the child. The child believed the injury was an accident and was not afraid of her mother. There were no signs of previous abuse or neglect. The family home was neat, clean and well stocked, and family members were found to interact positively. D.N.'s school indicated appropriate behavior from D.N. in that setting. The report concluded that child abuse was indicated but no further action was anticipated by DPW. An indicated report of child abuse naming Appellee as the perpetrator was filed with the Child Line and Abuse Regis-

---

**1.** Hypheremia is defined in the exhibit as blood in the eye. This definition is consistent with the one offered in Schmidts' Attorney's Dictionary of Medicine (Vol.2, 1991).

try on May 31, 1990. *See* 23 Pa.C.S.A. § 6338.

After considering the testimony and reports presented at the hearing, the expungement was denied. In its adjudication, the Hearing Examiner made the predicate determination that, under the applicable section of the Act, a serious injury had occurred. The Act defines *Serious physical injury* as "[a]n injury that: (1) causes a child severe pain; or (2) significantly impairs a child's physical functioning, either temporarily or permanently." 23 Pa.C.S.A. § 6303. Despite the testimony of D.N. that the pain was not severe, the Hearing Examiner adduced that D.N. had suffered a serious injury because surgery was required. The Hearing Examiner then turned to the question of whether the injury resulted from an accident or abuse. Although the Hearing Examiner accepted that Appellee did not act intentionally in striking D.N. in the eye with the buckle of the belt, she dismissed the impact of Appellee's intent. Rather, the Hearing Examiner focused on the foreseeable risk of harm attendant to the use of a belt with the buckle attached when administering corporal punishment. The important factor was the foreseeable risk that the child would take evasive action and injury would result as a natural consequence of that action. The report concludes: "There was a significant risk of serious bodily injury such as the possible loss of the eye when the Appellant [Appellee herein] attempted to administer corporal punishment with a belt bearing the buckle while the subject child was trying to dodge it." (Adjudication of Hearing Examiner at p. 4). The DPW adopted the Hearing Examiner's recommendation in toto, on December 26, 1997.

On appeal the Commonwealth Court reversed, finding that foreseeability alone is an insufficient basis to sustain a finding of child abuse. The Court held that the perpetrator must engage in behavior that reveals intent to harm the child. *P.R. v. Department of Public Welfare*, 759 A.2d 434, 438 (Pa.Cmwlth.2000). In reaching this decision, the Commonwealth Court overruled its prior caselaw in, *J.H. v. Department of Public Welfare*, 73 Pa.Cmwlth. 369, 457 A.2d 1346 (1983). Allocatur was granted to consider whether the Commonwealth Court erred in overruling *J.H.*

■ This matter comes before our court as an appeal by allowance from a decision of an administrative agency. Our review requires that the agency decision be affirmed absent a finding that constitutional rights were violated, an error of law was committed, that the procedure before the agency was contrary to statute, or that the findings of fact are not supported by substantial evidence. *J.S. v. Department of Public Welfare*, 528 Pa. 243, 596 A.2d 1114 (1991).

The Appellants, the DPW and the City of Philadelphia Department of Human Services,[2] argue that by overruling *J.H.*, the Commonwealth Court cast aside a long-adhered-to standard without consideration of the impact of its ruling. Appellants urge this court to reinstate the principle of foreseeability as the critical factor in reviewing child abuse cases where the assertion that the injury was accidental is at issue. Appellants assert that disregarding the seventeen-year history of defining accidental injury in terms of foreseeability would be contrary to the legislative intent given the manner in which the legislature defined child abuse in the Act. Additionally, Appellants object to the expunction of the report of indicated abuse in this case.

---

**2.** Throughout the opinion they are jointly referred to as "Appellants".

Appellee disputes Appellants' declaration that *J.H.* embodies the accepted precedential authority as to the legal standard for cases involving questions of abuse versus accident. Appellee asserts that *Boland v. Leska,* 308 Pa.Super. 169, 454 A.2d 75 (1982), which articulates a malicious intent standard to define child abuse, is the standard actually applied by the intermediate appellate courts in defining abuse. Appellee argues that distinguishing child abuse from accidental injury solely through the use of a foreseeability standard does not comport with the legislative definition of child abuse provided in the Act. Thus, Appellee believes that overruling *J.H.* was not in error. Alternatively, Appellee argues that if the foreseeability standard is to be followed, the events of this case do not satisfy that standard. Finally, Appellee asserts that the expunction should be sustained as Appellants failed to present substantial evidence to support an indicated report of abuse.

Before analyzing the respective positions of the parties as to the precedential authority of *J.H.* and *Boland,* we look to the statute and the intent of the Legislature as conveyed within the terms of the Act. The logical place to begin is with the definition of child abuse provided in the Act. At the time of the incident at issue child abuse was defined in pertinent part as: "Serious physical or mental injury which is not explained by the available medical history as being accidental...." 23 Pa.C.S.A. § 6303. The Act, as it relates to this definition section, was amended in 1994, Dec. 16, P.L. 1292, No. 151, § 1, effective July 1, 1995; 1995, March 31, P.L. 985, No. 10 (Spec.Sess. No. 1), § 14, effective in 60 days. The amended language states in relevant part: "The term 'child abuse' shall mean any of the following: (i) Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age." 23 Pa.C.S.A. § 6303(b)(1)(i). Although this case arose prior to the amendment, we note that the current language of the statute continues to define child abuse in contrast to accident. The Act offers no further definition of accident. As the words of the statute do not offer sufficient clarification of the meaning of accident we must expand the scope of our inquiry.

Judicial interpretation of legislation is directed by the Rules of Statutory Construction. 1 Pa.C.S. § 1901, *et seq.* The words of a statute must be construed according to their common usage and meaning. 1 Pa.C.S.A. § 1903; *Wajert v. State Ethics Commission,* 491 Pa. 255, 420 A.2d 439 (1980). The object of all statutory interpretation is to ascertain and effectuate the intent of the General Assembly. *Bonasi v. Board of Adjustment of Haverford Twp.,* 382 Pa. 307, 115 A.2d 225 (1955). 1 Pa.C.S.A. § 1921(c) provides:

> When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> (1) The occasion and necessity for the statute.
>
> (2) The circumstances under which it was enacted.
>
> (3) The mischief to be remedied.
>
> (4) The object to be attained.
>
> (5) The former law, if any, including other statutes upon the same or similar subjects.
>
> (6) The consequences of a particular interpretation.
>
> (7) The contemporaneous legislative history.
>
> (8) Legislative and administrative interpretations of such statute.

The parties offer contrasting definitions of the word accident. Each side presents only that portion of the relevant dictionary

definitions that support their respective positions. Appellee prefers the definition of accident relied upon by the Commonwealth Court. That definition was taken from Webster's Third New International Dictionary (1986), and states in relevant part:

> 2: occurring sometimes with unfortunate results by chance alone: **a:** UNPREDICTABLE: proceeding from an unrecognized principle, from an uncommon operation of a known principle, or from a deviation from normal; **b:** happening or ensuing *without* design, [or] *intent . . . .*

*P.R.*, 759 A.2d at 437 (emphasis added).

Appellants proffer a limited portion of the definition of accident from Black's Law Dictionary (7th ed.1999), offering the following verbiage:

> unintended and *unforeseen* injurious occurrence; something that does not occur in the usual course of events or that *could not be reasonably anticipated; [a] result, though unexpected, is not an accident; the means or cause must be accidental.*

Brief of Appellant, City of Philadelphia at 28; Brief of Appellant DPW at 15 (emphasis supplied).

Through exploration of the various dictionary offerings, it can be reasonably concluded that both foreseeability and lack of intent are equally important concepts in defining accident. *Wajert, supra.;* 1 Pa. C.S.A. § 1903. By looking at the purpose of the Act we can draw a better picture of the intent of the legislature as to the meaning of accident in this context.

Studying the Act, the following relevant points emerge. The need to prevent child abuse and to protect abused children from further injury is critical. 23 Pa.C.S.A. § 6302(a). The legislature sought to encourage greater reporting of suspected child abuse in order to prevent further abuse and to provide rehabilitative services for abused children and their families. 23 Pa.C.S.A. § 6302(b). The Act also establishes a statewide central registry for the maintenance of indicated and founded reports of child abuse, as identifying perpetrators of abuse serves to further protect children. 23 Pa.C.S.A. § 6331. Recognizing that identifying someone as a child abuser can profoundly impact that person's reputation, the release of such information is advocated only in certain limited venues. 23 Pa.C.S.A. § 6340 (reports of indicated and founded abuse identifying the perpetrator can be released to law enforcement, social work agencies, employers in child care services and other related venues). *See A.Y. v. Department of Public Welfare,* 537 Pa. 116, 641 A.2d 1148, 1152 (1994). Finally, as related to our specific inquiry herein, the Act recognizes and offers no restriction on the existing rights of parents to use corporal punishment. 23 Pa.C.S. § 6302(c). Thus, any definition of accident must encompass the aims of preventing abuse, and identifying perpetrators of abuse, while simultaneously maintaining the acknowledged right of parents to exercise corporal punishment as a legitimate means of discipline.

Finding no conclusive resolution by reference to the terms of the Act itself, the common definitions of those terms, and the stated purpose of the Act, we next consider the caselaw that has developed since the passage of the Act. We begin with a discussion of *J.H.*, and the cases following thereafter, and then turn to *Boland* and its progeny.

The Commonwealth Court decided *J.H.* in 1983. The court was presented with an appeal from the denial of an expunction. The underlying facts are that J.H., while administering corporal punishment, attempted to strike his stepson across the

buttocks with an oak stick. The child spun around as the stick was moving forward and the blow struck the child on the head. The child suffered a laceration requiring six sutures. After investigation a report of indicated abuse was filed. J.H. appealed, arguing that the child did not suffer a serious injury, and that the injury was accidental, as it was unintentional. The court summarily rejected the argument that the injury was not serious by looking at the fact that the child, only eleven years of age at the time, suffered a laceration to his head requiring six sutures. The court rejected the argument that the cause of the injury was accidental for the following reasons:

> The record supports the Hearing Officer's conclusion that J.H. intended to inflict pain. J.H. was aware of the natural consequences of his action, *i.e.*, that it would generate the child's reaction even though not intentional. Accordingly, we conclude that the Hearing Officer did not err as a matter of law in not characterizing the injury as accidental.

*J.H.*, 457 A.2d at 1348. A fair reading of the scant opinion in *J.H.* is that the court was convinced that where a parent uses an oak stick to administer corporal punishment, there is an intention to inflict serious pain beyond what is necessary to impose discipline. The court does not engage in any analysis of an appropriate legal standard for differentiating injuries caused by abuse from those caused by accidental means. Therefore, even though *J.H.* can be read to apply a foreseeability analysis to the term accident as set forth in the Act, that conclusion is reached by inference alone.

By tracing *J.H.* through the development of caselaw in expungement matters, the most telling fact is simply that *J.H.* is rarely cited. Our research discovered three specific citations to *J.H.* in later court decisions. In *D.E.S. v. Department of Public Welfare*, 130 Pa.Cmwlth. 37, 566 A.2d 1261, 1263, n. 4 (1989), *J.H.* is cited in a footnote and factually distinguished from *D.E.S.*, as the court finds no serious injury, thus, no abuse. The court in *Lehigh County Office of Children and Youth Services v. Department of Public Welfare*, 101 Pa.Cmwlth. 491, 516 A.2d 1305, 1306 (1986), merely referenced *J.H.* as authority for the procedure to obtain an expungement of a report of indicated child abuse.

*D.P. v. Department of Public Welfare*, 104 Pa.Cmwlth. 642, 523 A.2d 408, (1987), is the only case, to date, where the rationale of *J.H.* impacts on the decision. In *D.P.*, an indicated report of child abuse was filed after the mother repeatedly struck her son with an electrical cord leaving lacerations and open wounds on his legs and face. The mother's request to expunge the report was denied with the following account:

> In the instant case, although petitioner has denied any intent to injure her child, we can reasonably infer an intention to inflict serious injury and severe pain from her actions in repeatedly and wantonly whipping, with an electrical cord, an eleven-year-old child, clad only in his underwear. *See J.H. v. Department of Public Welfare*, 73 Pa.Commonwealth Ct. 369, 457 A.2d 1346 (1983).

*D.P.* 523 A.2d at 410. The reliance on *J.H.* in this case was for its relevance in inferring intent to abuse the child by the manner in which the corporal punishment was executed.

An examination of *J.H.* and its progeny reveals the absence of any reliance on *J.H.* for the legal proposition that accident, in the verbiage of the Act, is defined in terms of foreseeability. Thus, Appellants' argument that overruling the longstanding precedent embodied in the decision of *J.H.* will thwart the intent of the legislature is

completely at odds with the actual development of the caselaw in this area since the decision in *J.H.*

As for *Boland,* we note first that the case was decided by the Superior Court in 1982, and it arose in the context of a custody dispute, rather than an expunction proceeding. Mother and father were divorced, and each had remarried. The children resided with mother and stepfather and enjoyed visitation with father and stepmother. Father was enjoying a regularly scheduled visitation with his sons when he discovered bruises on the six-year-old boy, Sean. Father took the boys for a medical examination where the physician informed him that the bruising may have been the result of child abuse. Father refused to return the boys to mother at the appointed time. Mother filed a writ of habeas corpus for return of the boys to her custody. Father responded by asserting that it would not be in the best interests of the children to return to the custody of mother and stepfather, given the evidence of abuse. The writ was granted and custody of the children was returned to mother. Father appealed.

The question in *Boland* was whether the trial court erred in evaluating father's evidence of child abuse. The Superior Court accepted the trial court's assessment that the boys experienced no abuse. The bruises that aroused suspicion were on Sean's neck. Testimony revealed that the stepfather had caused the bruising when he grabbed the collar of Sean's pajamas in frustration because the child was not responding to his mother's questions. On another occasion the stepfather slapped Sean across the face when told that the boy had lost a sweater. The stepfather immediately apologized to Sean for the slap. No observable injury resulted from the slap and the neck bruising did not require medical treatment. In assessing the facts presented to determine if abuse occurred, the Superior Court applied the following standard:

> Parents or guardians may use corporal punishment to discipline their children so long as the force used is not designed or known to create a substantial risk of death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation. *18 Pa.C.S. § 509(1); see also Commonwealth v. Moore,* 261 Pa.Super. 92, 395 A.2d 1328 (1978). At some point, however, permissible corporal punishment no longer is such, but becomes malicious abuse; this point is reached when the parent or guardian acts with malicious intent in so punishing the child. *Commonwealth v. Kramer,* 247 Pa.Super. 1, 7, 371 A.2d 1008, 1011 (1977).

*Boland,* 454 A.2d at 78.

The Court in *Boland* was assessing the severity of the injury suffered by Sean. The standard articulated by the court is taken directly from the criminal code. The provision cited in *Boland* and the cases referenced therein concern the justifiable use of force as it relates to a defense in a criminal prosecution for assault and related charges arising where the victim is a child under the parental care or guardianship of the defendant. The *Boland* court never considered the question before it in terms of abuse versus accident. Rather, the court was looking at the incident in terms of corporal punishment versus abuse. Although we recognize the overlap in those questions, for precedential purposes it is necessary to note this distinction, and to acknowledge it when tracing *Boland* through later decisions that presumably rely upon it to resolve expunction matters.

Admittedly, *Boland* carries greater weight than *J.H.* in the development of a body of caselaw in expunction appeals.

However, as noted above, *Boland* had at its core the criminal defense of justification, and in most of the cases where *Boland* is cited, the reference is made as it pertains to the severity of the injury to the child. *B.J.K. v. Department of Public Welfare*, 773 A.2d 1271 (Pa.Cmwlth.2001)(Expungement denied as child suffered serious injury as the result of multiple repeated blows about the face and body); *City of Philadelphia v. Department of Public Welfare*, 767 A.2d 10 (Pa. Cmwlth.2001) (Expungement granted as DPW failed to establish that the one incident of corporal punishment resulted in severe pain necessary to establish a finding of abuse); *L.A.J. v. Department of Public Welfare*, 726 A.2d 1133 (Pa.Cmwlth. 1999) (Expungement granted; although child suffered welts on her legs from spanking with a belt, there was no showing of severe pain); *J.S. v. Department of Public Welfare*, 129 Pa.Cmwlth. 382, 565 A.2d 862 (1989) (Expungement denied where spanking of five-year-old girl on the buttocks with an open hand caused such serious bruising and severe pain that the child required medical attention); *N.B. v. Department of Public Welfare*, 107 Pa. Cmwlth. 26, 527 A.2d 623 (1987) (Expungement granted as there was insufficient evidence that spanking child with a paddle caused severe pain); *Appeal of E.S.*, 82 Pa.Cmwlth. 168, 474 A.2d 432 (1984) (Expungement granted; father's use of belt to spank son, causing a welt on his back, was not abuse as child did not suffer severe pain).

Reflection upon the case law cited by each side reveals that *J.H.* does not carry the weight of precedential authority that Appellants attribute to it; nor is Appellee's reliance upon *Boland* as the historically pertinent precedent completely accurate. In overruling *J.H.*, the Commonwealth Court did not abandon a strongly adhered to, long-standing precedent. Nevertheless, it would be overly simplistic to conclude that the legal standard articulated in *Boland* supplanted the standard proffered in *J.H.* for resolving when an injury to a child is accidental or abuse. That is because the two cases do not discuss the issue in the same terms. In *J.H.*, the court focused on how the injury occurred, whereas in *Boland,* the court looked at the severity of the injury. Although neither line of cases directly answers the query at issue, by reading them together we can glean a clearer picture of the correct legal standard.

A finding of abuse begins with the discovery that a child has suffered a serious injury. The investigation then goes in reverse in an effort to ascertain how and why that injury occurred. The most common initiation point is the administration of corporal punishment. Hon. Leonard P. Edwards, *Corporal Punishment and the Legal System*, 36 Santa Clara L.Rev. 983 (1996). Any definition of child abuse that arises by defining that term in contrast to accident must incorporate the reality that corporal punishment is undertaken with intent. Corporal punishment at its core embodies intent to inflict pain. *See L.A.J.*, 726 A.2d at 1136. Thus, the legislature could never have meant the term accident to be defined within the Act by focusing solely on the intent of the perpetrator. The tension in resolving cases where a parent or guardian is accused of child abuse when an act of corporal punishment results in a serious injury must be acknowledged. Undoubtedly, the legislature recognized this dilemma when drafting the definition of child abuse at issue. To balance the competing objectives of protecting children from abuse while maintaining the parental right to use corporal punishment, the legal standard for differentiating abuse from accident must acknowledge some level of culpability by the perpetrator

that his actions could reasonably create a serious injury to the child. The standard that best comports with the problem of defining abuse in terms of nonaccidental injury is criminal negligence.

Criminal negligence intertwines the concepts of foreseeability and intent to a degree that this court finds appropriate for differentiating cases of accidental and nonaccidental injury in keeping with the legislative directive contained within the Act. The legislature has defined criminal negligence as follows:

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(4). This definition satisfies the parameters of defining an injury caused by abuse as something that occurs in contrast to an injury caused by accident.

 Accordingly, we hold that in cases where a child suffers a serious injury arising from the administration of corporal punishment, a finding that the injury resulted from abuse versus accident will depend upon a showing, by the agency, through substantial evidence, that the injury resulted from criminal negligence.

Applying this standard to the present case, we conclude that DPW failed to present substantial evidence that D.N. was the victim of child abuse. One can question the wisdom of a parent's decision to use a belt with a buckle attached to administer a spanking. However, in most circumstances the decision to use a belt that bears a buckle cannot be viewed, as a gross deviation from the standard of care a reasonable parent would observe in the same situation. Without substantial proof that this unusual injury was more than the regrettable result of corporal punishment, we cannot allow the oddity of the result itself to presuppose the element of unjustifiable risk that would lead to the finding of criminal negligence. On the record presented in this case, we cannot conclude that DPW presented substantial evidence to sustain a finding of child abuse.

Therefore, albeit for different reasons, the Order of the Commonwealth Court is affirmed.

Former Chief Justice FLAHERTY did not participate in the consideration or decision of this case.