J-S56016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: R.M.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.A.C. | |
| | No. 723 MDA 2014 |

Appeal from the Order of March 28, 2014
In the Court of Common Pleas of Centre County
Civil Division at No.: CP-14-DP-0000014-2014

BEFORE:  PANELLA, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED NOVEMBER 07, 2014**

T.A.C. ("Mother") appeals the March 28, 2014 order that was entered following the dependency adjudication of her daughter, R.M.C. ("Child"), who was born in November of 2013.  That order also determined that Child had been the victim of abuse.  After careful review, we affirm.

Centre County Children and Youth Services ("CYS") first became involved with Mother and Child on February 3, 2014, when CYS received notice that Child's face was bruised from the left eye to the left side of her mouth.  Mother explained that her then-boyfriend, J.B., babysat Child for two hours on February 2, 2014, while she worked.  Mother noticed that Child's left cheek was red.  Mother alleged that J.B. stated that he had no knowledge as to the cause of the redness.  Mother saw that the cheek was

---

[*]     Retired Senior Judge assigned to the Superior Court.

bruised the next morning. Mother contacted a nurse from the Home Nursing Agency, who suggested that Mother take Child to the emergency room at Mt. Nittany Medical Center. Mother alleged that she told J.B. to leave the apartment because he had not told Mother what happened to Child's face.

On February 3, 2014, Child was taken to Mt. Nittany Medical Center. Child's bruises extended from the outside corner of her left eye to her mouth, but a CAT scan revealed no traumatic injuries. CYS was unable to locate J.B. On February 28, 2014, the abuse was deemed unfounded, and the case was closed.

On March 15, 2014, CYS received a call from the Mt. Nittany Medical Center informing them that Child was being prepared for a Life Flight transport to Geisinger Hospital in Danville, Pennsylvania. Child had been brought in by ambulance with serious injuries. Child had a fractured skull, a subdural hematoma, and a possible right eye socket fracture. Mother stated that she was bringing Child down the stairs in her stroller, and, when Mother placed the stroller on the landing, she heard a thud and saw Child on the floor. Mother alleged that the fall was one to two feet onto a carpeted surface.

Child was seen by several physicians at Geisinger Hospital. All five physicians who treated Child raised concerns that the injuries were non-accidental. Dr. Michelle Thompson stated that the injuries were not consistent with Mother's description of how the incident occurred. It was first believed that Child suffered a displaced right eye socket fracture.

However, further x-rays shows no such fracture. Child was seen by an ophthalmologist, who, after the examination, had no concerns about her eyes or her sight.

On March 17, 2014, CYS filed an emergency petition for protective custody of Child. The juvenile court granted the emergency petition on the same date, and CYS took custody of Child. Also on March 17, 2014, CYS filed a shelter care application, and the juvenile court held a shelter care hearing on March 18, 2014. Following the hearing, the juvenile court entered a shelter care order continuing Child in CYS' care and custody.

On March 19, 2014, CYS filed a dependency petition. Following a hearing on March 28, 2014, the juvenile court found Child dependent pursuant to 42 Pa.C.S.A. § 6302(1), and ordered that Child remain in foster care with reunification services to be initiated with a placement goal of returning Child to her home. In addition to finding Child dependent, the juvenile court made a finding that Child was the victim of child abuse.

On April 25, 2014, Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother presents the following claim of error:

Did the lower [c]ourt err in finding that the Child was a victim of child abuse as defined at 23 Pa.C.S.A. Section 6303 in that the testifying physician indicated that the injuries sustained by the Child could have occurred as a result of negligence, rather than intentional actions, of Mother?

Mother's Brief at 8.

We recently reiterated the appropriate standard of review as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (citation omitted).

"The petitioner bears the burden of proof in a dependency hearing, and must prove by clear and convincing evidence that '(1) the child is presently without proper parental care or control; and (2) such care and control is not immediately available.'"[1] *In re R.W.J.*, 826 A.2d 10, 14 (Pa. Super. 2003). Clear and convincing evidence is defined "as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in

---

[1] A dependent child is defined in section 6302 of the Juvenile Act as:

A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk. . . .

42 Pa.C.S.A. § 6302(1).

issue." ***In re K.M.***, 53 A.3d 781, 786 (Pa. Super. 2012) (citations and internal quotations omitted).

In her argument, Mother does not dispute the finding of dependency itself. Rather, Mother argues that there was insufficient clear and convincing evidence presented to warrant a finding of abuse. Mother argues that abuse only can be found when a child's injuries are caused by intentional acts. Because Dr. Thompson stated that the injuries could have been caused by negligent conduct, Mother contends that the finding of abuse was unsubstantiated. Mother's Brief at 14-17.

The Child Protective Services Law defines "child abuse" in pertinent part as follows:

> (b) Child abuse.—
>
> The term "child abuse" shall mean any of the following:
>
> > (i) Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age.

23 Pa.C.S.A. § 6303(b)(1)(i). "Nonaccidental" is defined as "[a]n injury that is the result of an intentional act that is committed with disregard of a substantial and unjustifiable risk." ***Id.*** at § 6303(a).

Regarding the issue of abuse, the juvenile court stated:

> The Court hereby finds that the above named child is a victim of child abuse as defined at 23 Pa.C.S. § 6303, in that the injury sustained by [Child] could not have happened the way [Mother] described. [Mother] describes bringing [Child] down a flight of stairs in her stroller and, upon placing the stroller on the landing, [Child] fell out of the stroller and on to the floor. The physicians

who treated [Child] at Geisinger Hospital in Danville, Pennsylvania, are calling [Child's] skull fracture and hematoma "a non-accidental injury," because the injury sustained by [Child] is not consistent with [Mother's] account of what happened.

Dependency Order, 3/28/2014, at 1.

Based upon the physician's testimony, and because the injury was not consistent with Mother's account of what happened, the court found that the injuries inflicted were non-accidental. Juvenile Court Opinion ("J.C.O."), 5/2/2014, at 1. Child was originally admitted to the Pediatric Intensive Care Unit of Geisinger Medical Center on March 15, 2014, and was transferred to the general Pediatric floor on March 16 2014. Notes of Testimony ("N.T."), 3/28/2014, at 11. At the time that Child was admitted at the hospital, Child was observed and treated for a skull fracture, a brain bleed, and a possible fracture of the eye socket. N.T., 3/18/2014, at 7-8.

As part of the intake procedure, Mother reported that she was carrying Child in a stroller down the stairs of her apartment. Mother further noted that she put the stroller down at the bottom of the stairs of her apartment and heard a thud. Mother then saw Child lying on the ground. Mother further reported that she had strapped Child into the stroller, and was not sure how Child fell out. Mother also related a similar story to the juvenile court at the shelter care hearing. N.T., 3/18/2014, at 12.

At the March 28, 2014 hearing, Dr. Thompson, a general pediatric physician, testified that it was "highly unlikely" that Child's injuries were caused by Child's fall as described by Mother. N.T., 3/28/2014, at 13. Dr.

Thompson, who was qualified before the juvenile court as an expert in pediatric medicine, further testified that Child's injuries were non-accidental, and as such, inferred intentional injury. *Id.* at 14. Dr. Lela Brink, a Pediatric Intensive Care Unit physician at the hospital, agreed that Child's injuries were non-accidental. *Id.* at 15. In addition, all five treating physicians on the team concluded that the injuries to Child were non-accidental. *Id.* at 21-22.

In regard to Mother's argument, Dr. Thompson also testified upon cross-examination that the injuries could have resulted from a negligent act, but also noted that such injuries could not have resulted from the events as Mother described them. N.T., 3/28/2014, at 16. However, Dr. Thompson's use of the word "negligence" was not fatal to CYS' case. Albeit in the context of corporal punishment, our Supreme Court has concluded that non-accidental injury includes those that resulted from criminal negligence, defined as "a substantial and unjustifiable risk." *P.R. v. Dep't of Public Welfare*, 801 A.2d 478, 487 (Pa. 2002). After *P.R.*, section 6303 was amended by the General Assembly to incorporate that language. *See F.R. v. Dep't of Public Welfare*, 4 A.3d 779, 787 (Pa. Cmwlth. 2010).[2] In *F.R.*,

---

[2] "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Petow v. Warehime*, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010).

our sister court determined that the definition of non-accidental injury has been codified to include the criminal negligence standard. Therefore, even with Dr. Thompson's testimony that the injuries could have been caused by negligence, the juvenile court could have found, and did so find, that Child's injuries were non-accidental. J.C.O. at 1.

Dr. Thompson was certain that, in this case, Child's injury was non-accidental. N.T., 3/28/2014, at 16-19. Also particularly compelling, is that, at four months old, Child was unable developmentally to get out of the stroller by herself. *Id.* at 18. The juvenile court found that Dr. Thompson's testimony was "firm, consistent, and unwavering" that Child suffered a non-accidental injury. J.C.O. at 1. Determining that the testimony was "unambiguous and certain," *id.* at 2, the juvenile court found sufficient evidence to determine that abuse had occurred. Therefore, Dr. Thompson's testimony and the remainder of the certified record support the juvenile court's conclusion that Child was the victim of non-accidental physical injury. Therefore, we determine that the juvenile court did not abuse its discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2014

- 8 -