IN THE COMMONWEALTH COURT OF PENNSYLVANIA

P.L.,                                  :
              Petitioner               :
                                       :     **SEALED CASE**
       v.                              :     No. 1047 C.D. 2019
                                       :     Submitted: May 12, 2020
Department of Human Services,          :
              Respondent               :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


OPINION
BY PRESIDENT JUDGE LEAVITT                         FILED: July 24, 2020


       P.L. (Mother) petitions for review of an adjudication of the Department
of Human Services (Department) that denied her request to expunge an indicated
report from the ChildLine and Abuse Registry (ChildLine)[1] naming Mother a
perpetrator of child abuse.    Mother injured her son, J.L. (Child), when she used a
broom handle to stop him from jumping on a sofa.  Instead of tapping his shoulder,
she hit his head and caused a laceration to his scalp.  Mother contends that she did
not act with criminal negligence and, thus, the Department erred in refusing to
expunge the indicated report of child abuse.  For the following reasons, we agree
and reverse.

       On August 6, 2018, Children and Youth Services (CYS) received a
report of suspected physical abuse of Child and began an investigation. It determined
that on July 28, 2018, Mother hit Child with a broom and caused an injury to his
head.  On September 12, 2018, CYS filed an indicated report of child abuse, naming

---

[1] ChildLine is "[a]n organizational unit of the Department [of Human Services] which operates a
Statewide toll-free system for receiving reports of suspected child abuse [and] refers the reports
for investigation and maintains the reports in the appropriate file."  55 Pa. Code §3490.4.

Mother as the perpetrator. Mother filed an appeal, and a hearing was conducted by an administrative law judge (ALJ) appointed by the Department's Bureau of Hearings and Appeals (Bureau).

At the hearing, the parties stipulated to the admission of Child's medical records, photographs of Child's head injury, an email exchange between CYS and its consulting physician, the CYS Investigation Report, and the file notes of the CYS caseworker. Given Mother's acknowledgment she caused Child's injury, the ALJ suggested that CYS "simply rest on their [sic] documents[.]" Notes of Testimony, 4/8/2019, at 16 (N.T. __); Reproduced Record at 137a (R.R. __). CYS agreed and did not present any witnesses. Mother was the sole person to testify.[2]

Mother testified that she and her husband, Je.L. (Father), have three children, ranging in age from four to seven years of age. Child is the youngest. On the day in question, Mother took the children to the barbershop where Father works. While Mother was sitting on a sofa in the back of the shop doing her school work on a computer, Child and his brother began to fight over a broom, which Mother took from them. Child then started jumping up and down on the sofa. Concerned that he would fall, Mother told him several times to stop, but he ignored her. Still seated, Mother picked up the broom to tap Child on the shoulder. Instead, the broom hit Child on the head. Child ran to Father and started crying. When Mother saw blood on Child's head, she wrapped his head in a towel and took him to the hospital.

Mother testified that Child stopped crying before they left for the hospital. She reported that she was the one that cried at the hospital because of

---

[2] Mother's children were present and ready to testify but the ALJ questioned the need for their testimony in light of the fact that the only issue was Mother's *mens rea.* N.T. 15; R.R. 136a.

Child's injury. The hospital did not medicate Child because he did not complain of pain. The doctor used three staples to repair the cut.

The medical record reported that Child sustained a "small laceration at the crown of the head" that was two centimeters in length. R.R. 56a. By email, CYS requested Mark Reuben, M.D., to review photographs of Child and render an opinion on whether Child had suffered significant pain from the injury. By email, Dr. Reuben responded that "[u]nder the circumstances of requiring staples, I feel that [Child] suffered significant pain at the time the injury was inflicted." R.R. 88a.

The CYS Investigation Report states that Mother disclosed that she hit Child on the head with a broom. It also states that Child provided inconsistent statements about the injury. Finally, it states that on the basis of photographs, Dr. Reuben opined that Child suffered significant pain. Based on this information, CYS filed an indicated report of child abuse naming Mother as a perpetrator.

The CYS case notes that were admitted into evidence include the caseworker's interviews of all three children. The interview notes report that Child was not sure how he got the injury, but he stated his head got hurt and he went to the hospital. Child's older brother stated that Mother hit Child with the broom, but he also stated that Mother had never hit any of them prior to this incident. Child's older sister stated that when she and her siblings misbehave Mother does not hit them; she sends them to their room. All of the children informed the caseworker that they felt happy and safe at home. The CYS case notes report that the caseworker examined all three children but found no suspicious bruises on any of them.

The ALJ denied Mother's appeal. The ALJ reasoned that the administration of corporal punishment constitutes child abuse where the perpetrator has acted with criminal negligence. The ALJ found that because "[Mother] struck

3

the subject child with what amounts to [be] a weapon," she acted with criminal negligence. ALJ Recommended Decision at 9. Specifically, the ALJ found that Mother's use of a broom handle, instead of her hand, was not the use of reasonable force. The ALJ recommended that Mother's expungement request be denied.

The Bureau adopted the ALJ's recommendation in its entirety. Mother sought reconsideration of the Bureau's adjudication, which was denied by the Secretary of Human Services. Mother then petitioned this Court for review.

On appeal,[3] Mother raises three assignments of error by the Department. First, Mother contends that the Department failed to consider the fact that the injury to Child's head was an accident, explaining that she did not aim for or intend to hit Child's head. Second, she contends that the Department erred in concluding that she acted with *mens rea,* which is required for a finding of criminal negligence. Third, she contends that the Department erred in treating the broom as a weapon and in holding that corporal punishment is lawful only if it is administered by the parent's hand.

We begin with a review of the law. Section 6303(b.1) of the Child Protective Services Law (Child Services Law) defines "child abuse" as "intentionally, knowingly or recklessly … [c]ausing bodily injury to a child through any recent act or failure to act." 23 Pa. C.S. §6303(b.1). Section 6303(a) of the Child Services Law defines "bodily injury" as the "[i]mpairment of physical condition or substantial pain." 23 Pa. C.S. §6303(a). However, when the alleged

---

[3] Our review of an adjudication in an expunction proceeding determines whether constitutional rights were violated, whether errors of law were committed, and whether the necessary findings of fact are supported by substantial evidence. *E.D. v. Department of Public Welfare*, 719 A.2d 384, 387 (Pa. Cmwlth. 1998). Whether CYS's evidence satisfied the evidentiary standard necessary to meet its burden of proof is a question of law. *In re S.H.*, 96 A.3d 448, 455 (Pa. Cmwlth. 2014).

perpetrator of physical abuse is a parent, consideration must be given to Section 6304(d) of the Child Services Law, which states as follows:

> Rights of parents.--Nothing in this chapter shall be construed to restrict the generally recognized existing rights of parents to use reasonable force on or against their children for the purposes of supervision, control and discipline of their children. Such reasonable force shall not constitute child abuse.

23 Pa. C.S. §6304(d).

This Court has explained that "[w]here the allegation of child abuse involves a parent's administration of corporal punishment for the purpose of disciplining a child, the ultimate question is whether the parent used 'reasonable force.'" *J.S. v. Department of Human Services*, 221 A.3d 333, 343 (Pa. Cmwlth. 2019) (citing 23 Pa. C.S. §6304(d)). Notably, the focus is "on the parent's conduct rather than the result." *Id*.

To differentiate "abuse" from an "accident" in the context of corporal punishment, our Supreme Court has offered the following guidance:

> To balance the competing objectives of protecting children from abuse while maintaining the parental right to use corporal punishment, the legal standard for differentiating abuse from accident must acknowledge some level of culpability by the perpetrator that his actions could reasonably create a serious injury to the child. The standard that best comports with the problem of defining abuse in terms of nonaccidental injury is *criminal negligence*.

*P.R. v. Department of Public Welfare, Office of Hearings and Appeals*, 801 A.2d 478, 486-87 (Pa. 2002) (emphasis added). Criminal negligence is defined as follows:

5

> A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, *involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.*

18 Pa. C.S. §302(b)(4) (emphasis added).

In ChildLine cases, the CYS agency bears the burden of proof. 23 Pa. C.S. §6341(c).[4] "[I]n an expunction hearing the standard of proof is preponderance of the evidence, and the statutory standard for the evidence is '[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion.'" *A.P. v. Department of Public Welfare*, 98 A.3d 736, 742-43 (Pa. Cmwlth. 2014) (quoting 23 Pa. C.S. §6303(a)). To reach a conclusion that abuse occurred, "the 'evidence must so preponderate in favor of [that] conclusion that it outweighs ... any inconsistent evidence and reasonable inferences therefrom.'" *R.J.W. v. Department of Human Services*, 139 A.3d 270, 282 (Pa. Cmwlth. 2016) (quoting *In re S.H.*, 96 A.3d at 453 n.4). Whether the evidence satisfies the statutory standard is a question of law. *A.P.*, 98 A.3d at 743.

With these principles in mind, we consider Claimant's contention that the Department erred in holding that she was a perpetrator of child abuse because the evidence did not establish criminal negligence. Mother's testimony was not challenged by CYS nor was it discredited by the ALJ. She argues that the evidence did not establish a gross deviation from the standard of care a "reasonable person would observe, in [her] situation." 18 Pa. C.S. §302(b)(4).

---

[4] Section 6341(c) of the Child Services Law states, in relevant part, "[t]hat the burden of proof in the hearing shall be on the appropriate county agency." 23 Pa. C.S. §6341(c).

6

The Department responds that Mother's actions were not accidental because she intended to "make contact with [Child] by using the broom." Department Brief at 11. It argues that the use of a broom to tap a child on the shoulder represented a "gross deviation" from the standard of care a reasonable person would observe in the situation. 18 Pa. C.S. §302(b)(4). The Department also argues that Mother was not administering corporal punishment because she described her action as trying to coax Child off of the sofa.

We reject the Department's argument that this is not a corporal punishment case because Mother was not attempting to punish Child for bad behavior. Section 6304(d) of the Child Services Law is not limited to punishment. It covers actions by parents "on or against their children for the purposes of *supervision, control and discipline* of their children." 23 Pa. C.S. §6304(d) (emphasis added). It is undisputed that Mother was attempting to supervise and control Child's behavior, after Child ignored her verbal commands to stop jumping on the sofa. Mother's conduct falls within the scope of Section 6304(d) of the Child Services Law.

The question, then, is whether Mother used reasonable force within the meaning of Section 6304(d). In support of her claim that CYS failed to demonstrate her actions were criminally negligent, Mother directs the Court to *P.R.*, 801 A.2d 478.

In that case, the mother discovered her six-year-old daughter writing on the walls of their home and punished her by hitting her with a belt. When her daughter ran to evade the blows, the belt buckle hit the child in the eye. Three days later the mother sought medical treatment for her daughter's swollen eye, which required surgery. The Department filed an indicated report of child abuse. It

7

acknowledged that the mother did not intend to strike her daughter in the eye, but concluded that the injury was a foreseeable result of using a belt with a buckle to administer punishment. On appeal, this Court reversed, concluding that foreseeability of the harm is insufficient to prove child abuse. The Supreme Court granted an appeal.

In affirming this Court, the Supreme Court held that when a child suffers a serious injury from corporal punishment, CYS must demonstrate criminal negligence by the parent. The Supreme Court held that CYS did not meet its burden, even though "[o]ne can question the wisdom of a parent's decision to use a belt with a buckle attached to administer a spanking." *P.R.*, 801 A.2d at 487. The Supreme Court concluded that the mother did not grossly deviate from the standard of care a reasonable person would observe in the situation and, thus, did not act with criminal negligence.

After *P.R.* was decided, the legislature amended the Child Services Law to add Section 6304(d), which authorizes a parent to use reasonable force to supervise, control and discipline a child. 23 Pa. C.S. §6304(d). In *Allegheny County Office of Children, Youth and Families v. Department of Human Services*, 202 A.3d 155 (Pa. Cmwlth. 2019), this Court explained that *P.R.* and Section 6304(d) are to be read harmoniously. As such, the factfinder must determine whether reasonable force was used "and in doing so, must consider whether the parent was criminally negligent in that he disregarded a substantial and unjustifiable risk or deviated from a standard of care that a reasonable person would observe in his situation[.]" *Allegheny County*, 202 A.3d at 167.

8

In *Allegheny County*, the father punished his five-year-old daughter by smacking her in the face, on her thigh and on her bottom.[5] The child sustained bruises and abrasions on her face, as well as two long scratches and red marks. She also had abrasions on her thigh that were tender to the touch. The child's pediatrician opined the injuries caused the child substantial pain. The ALJ found that the father had not used excessive force, noting that the child's pain had subsided by the next day, when she saw her pediatrician. The Department adopted the ALJ's recommendation, and CYS appealed to this Court. We affirmed.

In so holding, we reviewed other cases where a parent had inflicted even more serious injuries in the course of administering corporal punishment. For example, in *W.S. v. Department of Public Welfare*, 882 A.2d 541 (Pa. Cmwlth. 2005), a father hit his daughter in the ear with his hand, causing her to fall on the floor. He struck her twice more in the ear while she remained on the floor. By the following day, the child's ear was swollen. Medical tests established a 20-decibel hearing loss, although she recovered her hearing in a week. This Court held that the father's conduct did not constitute a gross deviation from the standard of care a reasonable person would observe in the parent's situation. Likewise, in *Children and Youth Services for County of Berks v. Department of Human Services* (Pa. Cmwlth., No. 1175 C.D. 2017, filed May 7, 2018),[6] the parent hit the child with a stick with enough force to break the stick and leave a large bruise. The child described the pain he experienced as an "8" on a scale of "0" to "10," although the

---

[5] The father denied hitting the child in the face and on the thigh; the ALJ found him not credible.

[6] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

injury was not considered severe. The conduct was held not to constitute criminal negligence.

In the present case, Mother was seated when she raised a broom to hit Child's shoulder but, instead, hit his head. This action resulted in a scalp laceration. In determining whether this action constituted criminal negligence, the focus is "on the parent's conduct rather than the result." *J.S.*, 221 A.3d at 343.

In *P.R.*, 801 A.2d 478, the mother was swinging at a moving target, and the injury was not caused by the belt but by the buckle. Similarly, here, Mother was swinging at a moving target, and the injury was caused by where the broom handle landed, *i.e.,* on Child's head instead of his shoulder. Child suffered a cut, with no bruising or swelling reported. CYS offered no evidence that Mother used excessive force, and it was its burden to produce such evidence. 23 Pa.C.S. §6341(c). It is uncontroverted that Mother was seated when she used the broom handle.

The Department characterized the broom as a "weapon." It held that Mother's use of this weapon, constituted criminal negligence because she should have used her hand. This is clear error.

The broom had a "thin" handle and was not constructed of wood. N.T. 33; R.R. 154a. The broom was "white," four feet in length and had "thin" plastic bristles. N.T. 35; R.R. 156a. The broom was a handy tool that Mother explained she "grabbed" so she did not have to stand. N.T. 37; R.R. 158a. The record does not support the Department's exaggeration.

More to the point, the Department's conclusion that corporal punishment may only be administered by hand to avoid a finding of criminal negligence has no support in the Child Services Law or in the case law. In *P.R.*, the corporal punishment was administered by a belt, and in *County of Berks* by a stick.

10

We may question the "wisdom" of using a broom handle, even a light-weight one, to stop a child from jumping on a sofa. *P.R.,* 801 A.2d at 487. However, an absence of wisdom does not constitute criminal negligence. As in *P.R.,* Mother's use of a broom handle, in itself, did not demonstrate *mens rea.*

Mother's testimony was fully credited. As Mother explained, she used "timeout and [loss] of privileges" to discipline her children, and the documentary evidence supports this claim. N.T. 26; R.R. 147a. Specifically, the notes from the interviews of Mother's children by the CYS caseworker support her testimony on her methods of child discipline.

CYS did not demonstrate that Mother used unreasonable force on Child or disregarded a substantial and unjustifiable risk or grossly deviated from the standard of care a reasonable parent would observe in her situation. Under *P.R.,* 801 A.2d at 487, and Section 6304(d) of the Child Services Law, 23 Pa. C.S. §6304(d), this demonstration is necessary to prove child abuse. *See also Allegheny County,* 202 A.3d at 167. Without that evidence, CYS did not prove that Mother acted with criminal negligence.

For the above reasons, we reverse the Department's adjudication and remand with the direction that the Department expunge Mother's indicated report from the ChildLine and Abuse Registry.

_____
MARY HANNAH LEAVITT, President Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

P.L.,                                    :
                Petitioner               :
                                         :    **SEALED CASE**
        v.                               :    No. 1047 C.D. 2019
                                         :
Department of Human Services,            :
                Respondent               :

# **O R D E R**

AND NOW this 24th day of July, 2020 the order of the Department of Human Services, Bureau of Hearings and Appeals, dated July 8, 2019, is hereby REVERSED and the above-captioned matter is REMANDED with the direction that the Department order the expunction of P.L.'s indicated report from the ChildLine and Abuse Registry.

        Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

P.L.,                                    :
                                         :
                    Petitioner           :  **CASE SEALED**
                                         :
         v.                              :  No. 1047 C.D. 2019
                                         :  Submitted: May 12, 2020
Department of Human Services,            :
                                         :
                    Respondent           :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


DISSENTING OPINION
BY JUDGE WOJCIK                                    FILED: July 24, 2020


I respectfully dissent.

Although I agree with the Majority's well-stated assessment of the law, I disagree with its application of the law to the facts presented here. Giving the Department of Human Services (Department) the benefit of all reasonable and logical inferences, its determination that P.L. (Mother) acted with the requisite *mens rea* when she struck and injured her child J.L. (Child) with a broom is supported by substantial evidence and is correct as a matter of law.

The Majority concludes that the injury was accidental. The "injury was caused by where the broom handle landed, i.e., on Child's head instead of his shoulder." Maj. Op. at 10. "There is no evidence that Mother used excessive force" because "she was seated when she used the broom handle." *Id.* In addition, the Majority surmises that the broom handle was not a weapon because it was "thin," "light-weight," and made of plastic. *Id.*

However, in my view, I believe that the evidence demonstrates that Mother acted with the requisite *mens rea* to meet the definition of abuse. The injury was not accidental. Although Mother may not have intended the outcome, she intended to make contact with Child by using a broom. Although she meant to hit Child's shoulder and hit his head instead, she struck Child with such force that, despite her sedentary position and use of a lightweight broom handle, she inflicted severe bodily injury to Child. Specifically, she lacerated Child's head, which necessitated an emergency room visit and three medical staples to repair. This was no mere "swat" or "tap" to stop a four-year-old child from jumping on the sofa, but was a forceful and intentional strike. Reproduced Record at 13a, 133a. As the Department's administrative law judge (ALJ) reasoned, "[Mother] could have swatted [Child] on his bottom; she could have hit him with the soft bristled end; as the . . . [C]hild was only four, she could have simply got up off her chair and removed him from the couch." ALJ Opinion, 6/28/19, at 9. Instead, she lost her patience, grabbed a broom and swung the handle with such force as to cause Child serious bodily injury. This is not "reasonable force" within the meaning of Section 6304(d) of the Child Protective Services Law, 23 Pa. C.S. §6304(d).

For these reasons, I would affirm.

_____
MICHAEL H. WOJCIK, Judge

MHW - 2