541 A.2d 63

Aaron's Boarding Home and Hattie James, Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 26, 1988, before Judges COLINS and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*John D. Enright,* for petitioners.

*Catherine Stewart,* Assistant Counsel, for respondent.

OPINION BY JUDGE PALLADINO, May 16, 1988:

Hattie James (Petitioner) and Aaron's Boarding Home (ABH) appeal from a Department of Public Welfare (DPW) order which upheld the revocation of Petitioner's boarding home license.

ABH was licensed by DPW in 1981. On October 1, 1985, a resident of ABH was injured in an altercation with a Mr. John Aaron, who was an employe at ABH.[1] On October 2, 1985, the Personal Care Boarding Home Office received an abuse complaint regarding Mr. Aaron's treatment of the resident. A boarding home inspector made an unannounced visit to ABH on October 3, 1985 and interviewed four residents, one staff member, and Mr. Aaron. On December 11, 1985, the Deputy Secretary for Mental Health sent Petitioner a letter stating that based on the recent complaint and subsequent investigation DPW was revoking ABH's license pursuant to section 1026(b)(5) of the Public Welfare Code (Code).[2] The letter stated:

> The decision to revoke the license pursuant to Subsection (b), is based upon evidence we have received that Mr. John Aaron, acting in the capacity of provider, subjected residents of your personal care boarding home to physical and verbal abuse. *On October 1, 1985, Mr. John*

---

[1] In his findings of fact, the hearing officer noted that Mr. Aaron was identified as Petitioner's husband. Finding of Fact No. 3. Petitioner has asserted she never married Mr. Aaron. We note that when Petitioner applied for a certificate of compliance (on February 2, 1981) she signed the application "Hattie Aaron" and that under "Name of Facility Director" on that application are the names "Hattie and John Aaron." The hearing officer found that "[d]uring those periods when Mrs. Aaron ([Hattie] James) was absent from the Home, Mr. John Aaron, who was identified as [Petitioner's] husband, was in charge of the Home." Finding of Fact No. 3.

[2] Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §1026(b)(5).

*Aaron yelled and swore and proceeded to hit, slap and choke a resident, Katherine Brand, inflicting bruises and drawing blood.* The incident was witnessed and confirmed by other residents and staff and the bruises and blood were confirmed by Ms. Brand's therapist. (Emphasis in original.)

The letter ordered Petitioner to cease operation of ABH.

Petitioner appealed the decision of the Deputy Secretary for Mental Health and a fair hearing was held on April 10, 1986. DPW presented the testimony of the injured resident, the injured resident's therapist, and the inspector who investigated the complaint. Petitioner presented her own testimony. The hearing officer concluded DPW was correct in revoking ABH's license based on section 1026(b)(5) of the Code, and recommended that Petitioner's appeal be denied. The Director of the Office of Hearings and Appeals adopted the hearing officer's recommendation on June 16, 1986 and denied Petitioner's appeal. Petitioner has petitioned this court for review.

Petitioner raises two issues for our review: 1) whether DPW may revoke a license pursuant to section 1026(b) without first applying the provisions of section 1026(a); and 2) whether DPW may revoke a license without establishing a pattern of abuse of residents.

This case is governed by section 1026 of the Code, and our decision hinges on interpretation of this section. The section provides, in full:

**§1026. Refusal to issue license; revocation; notice**

(a) Whenever the department, upon inspection or investigation, shall learn of violation of this act or of regulations adopted by the department pursuant to this act, it shall give writ-

ten notice thereof to the offending person. Such notice shall require the offending person to take action to bring the facility into compliance with this act or with the relevant regulations within a specified time.

(b) The department shall refuse to issue a license or shall revoke a license for any of the following reasons:

(1) Violation of or non-compliance with the provisions of this act or of the regulations pursuant thereto;

(2) Fraud or deceit in obtaining or attempting to obtain a license;

(3) Lending, borrowing or using the license of another, or in any way knowingly aiding or abetting the improper granting of a license;

(4) Gross incompetence, negligence or misconduct in operating the facility;

(5) Mistreating or abusing individuals cared for in the facility.

(c) Whenever the department revokes or refuses to issue a license, it shall give written notice thereof by certified mail. Such notice shall specify the reason for the refusal or revocation.

Petitioner argues that subsection (a) requires DPW to give licensees an opportunity to correct non-compliance prior to revocation of a license. We disagree.

In the present case, it is not disputed that Mr. Aaron was involved in an altercation with a resident, and the fact-finder found that when Petitioner was not available to oversee the operation of the boarding home, Mr. Aaron was left in charge. Finding of Fact No. 3. The fact-finder also found that as a result of the altercation with Mr. Aaron, the resident suffered "a cut, marks, and/or bruises on or around her neck, ear, and

eye." Finding of Fact No. 6. These facts compel revocation. Where a violation is as egregious as the one established here, it would not be reasonable to require an opportunity to correct prior to revocation.[3] *See* section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1922(1) ("[T]he General Assembly does not intend a result that is . . . unreasonable.")

We emphasize the nature of the abuse here. Mr. Aaron at various times was in a supervisory capacity at ABH and was not the traditional employee one might find in this situation. At the time of the incident, Petitioner was absent and Mr. Aaron was in charge. The resident's injuries were such that she sought treatment at a hospital emergency room. These facts are most compelling and fully support the revocation of Petitioner's license.

We turn now to Petitioner's second argument. Petitioner asserts that the statute requires a showing of a *pattern* of abuse, and that such a pattern was not shown here. Petitioner bases her argument on the plural "individuals" in subsection (b)(5). Even if we were to assume that Mr. Aaron's conduct was an isolated incident, we decline to set forth a holding that more than one instance of physical abuse must be established prior to revocation. We are aware that other facts in other

---

[3] We recognize that subsection (a) and subsection (b) appear to be conflicting statutory mandates. However, this case does not require that we resolve the entirety of the apparent conflict. We hold that the facts establish a section 1026(b)(5) violation, and that the statute mandates revocation. This holding does not, of course, reconcile subsection (a) with subsection (b)(1). We decline to address that conflict at this time, although we offer the dicta that subsection (b)(1) is designed to provide for revocation where non-compliance has been noted pursuant to subsection (a) and the licensee has failed to correct the noted deficiencies. Subsections (b)(2-4) are of the same egregious nature as (b)(5) and would therefore mandate revocation without an opportunity to correct.

cases may provide cause for refinement of our interpretation of the statute. In the present case, however, Mr. Aaron was in charge of ABH at the time of the incident. We will not hold, on these facts, that once is not enough.

Accordingly, the order appealed from is affirmed.

ORDER

AND NOW, May 16, 1988, the order of the Department of Public Welfare in the above-captioned matter is affirmed.