# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harrisburg Area YMCA,          :
                Petitioner      :
                                  :
           v.                  :     No. 799 C.D. 2022
                                  :     Argued: September 11, 2023
Department of Human Services,    :
                Respondent     :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER      FILED: October 19, 2023

Harrisburg Area YMCA (YMCA) petitions for review of an Order of the Department of Human Services (DHS), Bureau of Hearings and Appeals (BHA), adopting the recommendation of an Administrative Law Judge (ALJ) that denied YMCA's appeal of DHS's revocation of YMCA's regular certificate of compliance to operate a child day care center. YMCA contends DHS must issue a written notice with an opportunity to correct deficiencies prior to revocation, DHS should have considered YMCA for a provisional license because it was in substantial compliance with applicable regulations, and the ALJ abused their discretion in denying YMCA's Motion for Summary Judgment (Motion).

## I. BACKGROUND[1]

### A. The Incident

YMCA operated a childcare center in the Lower Paxton Township area, located at 4618 Linglestown Road, Harrisburg, beginning in the late 1980s (the Center). (ALJ Adjudication (Adjudication), Findings of Fact (FOF) ¶ 3.) YMCA operates 30 other childcare facilities in the greater Harrisburg area, each of which is in good standing with valid certificates of compliance. (*Id.* ¶¶ 2, 26.) The Center received citations only for minor violations up until the subject of this matter. (*Id.* ¶ 4.)

On April 23, 2018, a staff member witnessed another staff member shaking a five-month-old infant because the infant was crying and would not go to sleep (the Incident). (*Id.* ¶¶ 5-6, 9.) The infant suffered two fractured ribs as a result of the Incident. (*Id.* ¶ 9.) Senior Childcare Director (Director) was informed of the Incident and directed the staff member who was responsible to be moved to a different classroom, and the staff member who witnessed the Incident to write down what was observed. (*Id.* ¶¶ 6-7.) Director interpreted the Incident as "a staffing issue." (*Id.* ¶ 8.) Although the staff member who witnessed the Incident was trained to report this type of occurrence to the ChildLine and Abuse Registry (ChildLine), the staff member did not report it. (*Id.* ¶ 10.)

On April 26, 2018, upon learning the Incident was not reported, YMCA immediately reported the Incident, relieved both staff members of their positions, and implemented corrective procedures reminding employees of their duties to

---

[1] YMCA concedes "[t]he dispositive facts are not in dispute," and this matter involves issues "of a purely legal nature" and questions that are "purely procedural." (YMCA's Br. at 14, 27.)

report incidents, inform parents, and remove "individual[s] suspected of misconduct from the premises." (*Id.* ¶¶ 11-12.)

### B. The Investigations

On April 27, 2018, Ryan Traynor, a Certification Representative with DHS's Office of Child Development and Early Learning (Certification Representative), conducted both a Complaint Inspection due to the Incident and an Unannounced Monitoring Inspection of the Center. (*Id.* ¶¶ 13, 15.) During the Complaint Inspection, Certification Representative cited the following violations of the regulations:

> a. 55 Pa. Code §§ 3270.19(a); 3270.32(a)[,] regarding the facility having "knowledge about a child being physically harmed while in care failed [sic] to provide the required and timely notification to Child[L]ine;" and
>
> b. 55 Pa. Code §§ 3270.21; 3270.113(b)[,] regarding a staff person observing another staff person shaking a child in a violent manner. [ ]

(*Id.* ¶ 14 (citing Ex. C-1).)

During the Unannounced Monitoring Inspection, Certification Representative cited the following violations of the regulations:

> a. 55 Pa. Code § 3270.182(7)[,] regarding the facility's staff's failure to provide parental notification about the high probability of injury to a child shaken in a violent manner by staff; and
>
> b. 55 Pa. Code § 3270.132(a)[,] regarding the facility's staff's failure to recognize the gravity of the [five]-month[-]old who was shaken in a violent manner and there were no calls of emergency care/services to determine the general health of the child who had two fractured ribs. [ ]

3

(*Id.* ¶ 16 (citing Ex. C-2).) On June 28, 2018, Certification Representative conducted another Unannounced Monitoring Inspection and cited the violation of "55 Pa. Code § 20.71(a)(5)[,] regarding a facility staff person mistreating or abusing clients being cared for in the facility or receiving service from the agency" with respect to the Incident that had occurred two months previously. (*Id.* ¶ 18 (citing Ex. C-3).) DHS documented these violations in "Inspection Summaries dated April 27, 2018[,] and June 28, 2018." (*Id.* ¶ 19.)

On July 27, 2018, DHS revoked YMCA's Certificate of Compliance to operate the Center (Certificate of Compliance) for:

> 1) failure to comply with [Section 1026(b)(1) of the Human Services] Code[, 62 P.S. § 1026(b)(1),[2]] and DHS's regulations, . . . 55 Pa. Code § 20.7l(a)(1)[-](2), 55 Pa. Code §[§] 3270.l[-3270.241]; 2) mistreatment or abuse of clients being cared for in the facility or receiving service from the agency, 62 P.S. § 1026(b)(5)[,] 55 Pa. Code § 20.71(a)(5); and 3) gross incompetence, negligence[,] and misconduct in the operation of a childcare program, 62 P.S. § 1026(b)(4), 55 Pa. Code § 20.7l(a)(6).

(Joint Stipulation of Facts ¶ 10, Reproduced Record (R.R.) at 90a.) DHS mailed YMCA a Letter of Revocation dated July 27, 2018 (Revocation Notice), which included the Inspection Summaries. (FOF ¶¶ 20, 22.) The Revocation Notice stated YMCA may operate the Center while its appeal of the revocation of its Certificate of Compliance was pending if it submitted correction plans within 15 days. (Revocation Notice at 3, R.R. at 26a.) DHS did not consider YMCA for a provisional license before revocation. (FOF ¶ 21.)

Upon receipt of the Revocation Notice on July 30, 2018, YMCA immediately submitted a correction plan. (*Id.* ¶ 23.) YMCA timely appealed the revocation on August 6, 2018, after it became aware DHS intended to follow through with the

---

[2] Act of June 13, 1967, P.L. 31, as amended, 62 P.S. §§ 101-1503.

revocation despite submission of a correction plan. (*Id.* ¶ 24.) Pending appeal, YMCA voluntarily closed the Center on August 24, 2018. (*Id.* ¶ 25.)

### C. Administrative Hearing

Prior to the hearing on YMCA's appeal, YMCA filed its Motion on December 23, 2019. Therein, YMCA argued it was entitled to summary judgment on two grounds: (1) DHS "failed to serve written notice of the [] violations prior to effectuating the [r]evocation"; and (2) YMCA was entitled to a provisional license for the Center as it was in substantial compliance with applicable regulations. (Motion at 1, 6, 9, R.R. at 42a, 47a, 50a.) YMCA requested BHA grant its Motion "and enter an [o]rder reversing the revocation" and directing DHS to issue YMCA a provisional license to operate the Center. (*Id.*, Wherefore Clause, R.R. at 53a.)

An administrative hearing before the ALJ was held on January 14, 2020. At the hearing, the ALJ heard argument on the Motion, which the ALJ partially denied. Specifically, the ALJ ruled in favor of DHS regarding the issue of notice. (Hearing Tr. at 13, R.R. at 130a.) As to the issue of substantial compliance and whether YMCA was entitled to a provisional license to operate the Center, the ALJ stated "I am not going to grant the [M]otion . . . at this point from the bench. . . . [DHS] hasn't put on a case yet. . . . I think [] it's premature to say [YMCA] was in substantial compliance at this point." (Tr. at 17, R.R. at 134a.)

DHS then presented Certification Representative as its witness, who testified as follows. Certification Representative described his job responsibilities and investigation procedures. (FOF ¶¶ 29-30.) According to Certification Representative, inspection summaries and an opportunity to submit correction plans are typically given to facilities before a sanction or revocation is issued. (*Id.* ¶ 31.) Certification Representative submits inspection summaries and a recommendation

5

to a supervisor, who shares them with the Division of Regulatory Administration (DRA) and its legal department. (*Id*. ¶ 32.) Certification Representative makes recommendations and does not make final decisions regarding revocation of certificates, and DRA is the entity that issues sanctions and revocations. (*Id*. ¶¶ 32-33.) The ALJ found Certification Representative's testimony credible. (*Id*. ¶ 28.)

YMCA presented the testimony of Director and its President and Chief Executive Officer (President and CEO). Director testified to the Incident and the failure to immediately notify the parents of the child or ChildLine of the Incident as required. (*Id*. ¶¶ 38-41.) The ALJ found Director's testimony credible. (*Id*. ¶ 37.) President and CEO testified, in relevant part, as follows. President and CEO has been in his position for 22 years. (*Id*. ¶ 42.) He supervises 4 branch executives and oversees 28 facilities that have been operating for 40 years, serving 950 children. (*Id*. ¶ 43.) On July 18, 2018, DHS sent a letter to YMCA at a Forster Street address referencing revised inspection summaries and asked YMCA to submit correction plans by August 1, 2018. (*Id*. ¶ 44.) President and CEO testified that this letter should have been sent to a North Front Street address and was not received until August 3, 2018. (*Id*. ¶¶ 47, 49.) According to President and CEO, the Revocation Notice, dated July 27, 2018, with the Inspection Summaries, which was also sent to the Forster Street address, was received on July 30, 2018. (*Id*. ¶ 48.) President and CEO explained he appealed DHS's revocation despite closing the Center because the other 28 operating childcare centers in the greater Harrisburg area must disclose whether any facility has had its license revoked. (*Id*. ¶¶ 51-52.) President and CEO wishes to preserve and protect these other facilities' reputations by having DHS's revocation reversed on appeal. (*Id*. ¶ 53.) The ALJ found President and CEO's testimony credible. (*Id*. ¶ 42.)

*D.    Adjudication*

On July 1, 2022, the ALJ issued a Recommendation, with proposed findings of fact and an opinion. First, the ALJ recommended denying YMCA's Motion finding there were genuine issues of material fact as to

> whether [YMCA] [wa]s entitled to an opportunity to correct deficiencies under 62 P.S. §1026(a), whether [DHS]'s revocation of [YMCA]'s [C]ertificate of [C]ompliance was contrary to law as written notice of the alleged violations was not served prior to the revocation, and whether [YMCA] [wa]s entitled to receive a provisional license if it was in substantial compliance with [Human Services] Code and [r]egulations.

(Adjudication at 19.)

The ALJ then discussed whether DHS properly revoked YMCA's Certificate of Compliance to operate the Center. Because the Revocation Notice notified YMCA of the alleged violations and advised YMCA to submit correction plans within 15 days, the ALJ concluded DHS met its duty to notify under Section 1026(a) of the Human Services Code. (*Id*. at 19-21.) To the extent YMCA argued the Revocation Notice was sent to the incorrect mailing address, the ALJ reasoned that there is no requirement in Section 1026 to provide notice prior to revocation, and, notwithstanding, President and CEO received notice of the violations and DHS's decision to revoke, timely appealed, received reasonable notice of a hearing, and had an opportunity to be heard at that hearing.[3] (*Id*. at 20-21.) Although YMCA did not dispute the violations, the ALJ found DHS had "more than sufficient grounds to

___

[3] Aside from noting the alleged address discrepancy in its Statement of the Case in its brief, (YMCA's Br. at 5), YMCA does not make any arguments that the July 18, 2018 letter was defective as a result thereof. Rather, YMCA's argument is centered on the Revocation Notice sent July 27, 2018, and received July 30, 2018, which was before it received DHS's July 18, 2018 letter on August 3, 2018. Thus, as discussed more fully in the parties' arguments below, YMCA argues its certificate was revoked before it had written notice of the alleged violations.

revoke" YMCA's license to operate the Center based on the Incident and the violations of Section 1026(b) and various regulations.[4] (*Id*. at 20.)

Last, the ALJ analyzed whether DHS properly revoked YMCA's certification without issuing a provisional license for the Center. The ALJ reasoned YMCA was a licensee and not an applicant, preventing YMCA from being eligible for a provisional license. (*Id*. at 21.) The ALJ further noted that even though YMCA did immediately submit correction plans, it was not in substantial compliance with regulations at the time of the Incident. (*Id*.) Moreover, the ALJ explained:

> The law does not provide an entitlement to a provisional certificate in the event a provider's certificate is revoked. *Burroughs v. Dep't of Pub. Welfare*, . . . 606 A.2d 606 (Pa. [Cmwlth.] 1992)[.] [DHS] has the express authority to refuse to issue or revoke a license for violation of the [Human Services] Code or regulations. *Cities v. Dep't of Pub. Welfare*, . . . 548 A.2d 1345 (Pa. Cmwlth.[]1988). Furthermore, "any one such violation provides sufficient grounds for refusing a license." *Altagracia De Pena Family Day Care v. Dep't of Pub. Welfare*, 943 A.2d 353 (Pa. Cmwlth. 2007); *Pine Haven Residential Care Home v. Dep't of Pub. Welfare*, . . . 512 A.2d 59 (Pa. Cmwlth. 1986).

(*Id*.)

---

[4] The specific provisions of Section 1026(b) for which YMCA was cited were:

(1) Violation of or non-compliance with the provisions of this act or of regulations pursuant thereto;

. . . .

(4) Gross incompetence, negligence or misconduct in operating the facility; and

(5) Mistreating or abusing individuals cared for in the facility.

62 P.S. § 1026(b)(1), (4)-(5). It was also cited for violating the following regulations: 55 Pa. Code §§ 20.71(a)(5), (6), 3270.19(a), 3270.21, 3270.32(a), 3270.113(b), 3270.132(a), and 3270.182(7).

8

The ALJ thus concluded that DHS properly exercised its discretion in revoking YMCA's certificate of compliance and recommended that YMCA's appeal should be denied. (*Id*. at 22-23.) By Order dated July 1, 2022, the BHA adopted ALJ's recommendation in full. (BHA Order.) YMCA timely petitioned this Court for review.

## II. DISCUSSION

On appeal,[5] YMCA raises three issues.[6] First, YMCA asserts DHS must consider YMCA for a provisional license for the Center as YMCA was in substantial compliance with applicable regulations. YMCA argues it was in substantial compliance because it has an extensive history of compliance, submitted correction plans, and Certification Representative testified to this effect. Second, it argues under Section 1026 of the Human Services Code, DHS must provide YMCA a separate, written notice before revoking YMCA's Certificate of Compliance to operate the Center. For support, YMCA contends Section 1026(a)-(c) must be read as a chronological process. Third, YMCA argues the BHA abused its discretion when it denied YMCA's Motion because YMCA posited questions of pure law.

YMCA first argues DHS must have considered YMCA for a provisional license for the Center under Section 1008 of the Human Services Code, 62 P.S. § 1008, and DHS's failure to do so constitutes a violation of due process. YMCA contends the language found in Section 1008(a) mandates DHS to issue a provisional license when a facility shows it corrected its deficiencies, and corrective measures are relevant to this determination. (YMCA's Br. at 22-23.) YMCA cites *KC*

---

[5] Our scope of review is "limited to determining whether an error of law was committed, whether constitutional rights were violated," and "whether necessary findings of fact are supported by substantial evidence." *Altagracia De Pena Family Day Care*, 943 A.2d at 356 n.3.

[6] We have reordered YMCA's arguments for ease of discussion.

9

*Equities v. Department of Public Welfare*, 95 A.3d 918, 931 (Pa. Cmwlth. 2014), and *Miller Home, Inc. v. Department of Public Welfare*, 556 A.2d 1, 3 n.12 (Pa. Cmwlth. 1989), for the contention that the first provisional license is mandatory if a facility shows it is in substantial compliance with regulations. YMCA emphasizes that in these cases where a provisional license was not granted, the facilities first had multiple opportunities to cure deficiencies and failed to do so. (YMCA's Br. at 21-22.) YMCA further distinguishes itself from these cases because it argues it is not a "problem facility" with continuing deficiencies. (*Id*. at 25.)

YMCA also asserts Certification Representative's testimony supports the proposition that provisional licenses are considered for facilities that are not in full compliance, (*id.* at 23-24, 26), and it is uncontested that DHS did not consider issuing YMCA a provisional license, (Stipulation of Facts ¶ 11, R.R. at 90a). YMCA lastly argues its lack of serious violations in the history of its lengthy and vast operations and the fact that it submitted correction plans almost immediately upon receiving notice of revocation supports issuance of a provisional license. (YMCA's Br. at 25-27.)

DHS responds by first stating YMCA acted in an "incompetent and negligent manner[,]" entitling DHS to revoke YMCA's license and cites *Aaron's Boarding Home v. Department of Public Welfare*, 541 A.2d 63 (Pa. Cmwlth. 1988), as support. (DHS's Br. at 20-22.) DHS further argues YMCA was not in substantial compliance at the time of the Incident, and thus DHS properly denied considering YMCA for a provisional license. (*Id*. at 22-26.) DHS also contends YMCA had the burden to prove at the hearing that it was in substantial compliance at the time of the Incident, which it failed to do. (*Id*. at 25-29.) DHS further contends Certification Representative's "testimony cannot change the plain meaning of [Section] 1008."

(*Id.* at 29.)  Finally, DHS argues YMCA's reputation and lack of serious violations is irrelevant in determining whether a facility is entitled to a provisional license.  (*Id.* at 31.)

Section 1008 of the Human Services Code governs provisional licenses and provides:

> (a) When there has been substantial but not complete compliance with all the applicable statutes, ordinances and regulations and when the applicant has taken appropriate steps to correct deficiencies, [DHS] shall issue a provisional license.
>
> (b) [DHS] may issue a provisional license under this section when it is unable to assess compliance with all statutes, ordinances and regulations because the facility has not yet begun to operate.
>
> (c) A provisional license shall be for a specified period of not more than six months which may be renewed no more than three times.
>
> (d) Upon full compliance by the facility, [DHS] shall issue a regular license immediately.

62 P.S. § 1008.  DHS's regulations also provide that "[a] provisional certificate of compliance is issued if the facility . . . is in substantial, but not complete, compliance with applicable statutes, ordinances, and regulations."  55 Pa. Code § 20.54(a).

Generally, a facility must be in substantial compliance at the time of the violation in order to be considered for a provisional license.  *KC Equities*, 95 A.3d at 931.  In addition, licensees are eligible for provisional licenses, not just applicants. *Kidzoo Child Care Ctr. & Preschool v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 985 C.D. 2021, filed July 15, 2022), slip op. at 12.[7]

---

[7] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b)(1)-(2), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

11

DHS argues that the Court here should follow *Aaron's* in which this Court held that an egregious violation can justify revocation without a provisional license. 541 A.2d at 65. However, *Aaron's* is distinguishable. In *Aaron's*, the Department of Public Welfare (DPW)[8] revoked the license of a personal care boarding home for violation of Section 1026(b)(5). The letter sent by DPW stated that the decision to revoke was

> based upon evidence we have received that Mr. John Aaron, acting in the capacity of provider, subjected residents . . . to physical and verbal abuse . . . . *Mr. John Aaron yelled and swore and proceeded to hit, slap and choke a resident . . . inflicting bruises and drawing blood.* The incident was witnessed and confirmed by other residents and staff . . . .

*Aaron's*, 541 A.2d at 64 (emphasis in original). More specifically, it was not disputed that Mr. Aaron, who committed the violation, was at times left in charge of the facility, and the Court emphasized that he was "at various times [] in a supervisory capacity . . . and was not the traditional employee one might find in this situation. **At the time of the incident** [in question] . . . Mr. Aaron **was in charge**." *Id*. at 65 (emphasis added). In addition, the resident sought treatment at a hospital emergency room. The Court found "[t]hese facts are most compelling and fully support the revocation. . . ." *Id*. Therefore, the Court concluded that DPW properly revoked the boarding home's license based, not only on the nature of the incident, but the fact that the incident was committed by an employee in a position of supervisory authority, who was in charge of the facility, and not a "traditional employee." *Id.*

---

[8] DPW subsequently changed its name to the DHS. Section 103 of the Human Services Code, added by Section 2 of the Act of September 24, 2014, P.L. 2458, 62 P.S. § 103 (effective November 24, 2014).

Thus, the Court in *Aaron's* relied on both factors – the nature of the incident **and** the authority of the employee involved in determining whether the facts supported revocation of the license. However, in this case, DHS has examined only the nature of the incident and has not considered the authority of the employees involved. Unlike in *Aaron's*, the employee who mistreated the child and the employee who witnessed the mistreatment and did not report it were not in charge, and had no supervisory authority. DHS did not take this into consideration or discuss the correction plan proposed by those in authority regarding how they would prevent any future reoccurrence before permanently revoking the license.

DHS's failure is particularly problematic in this case, where there is no history or pattern of violations. This Court has found a lack of substantial compliance where a licensee has a history of violations or continues to repeat the same violations. *Lil Shining Stars, Inc. v. Dep't of Hum. Servs.*, 140 A.3d 83, 97 (Pa. Cmwlth. 2016); *Liberty Manor Personal Care Home v. Dep't of Pub. Welfare* (Pa. Cmwlth., No. 979 C.D. 2014, filed Apr. 17, 2015), slip op. at 24-25. However, when a licensee does not have a history or pattern of violations, this Court has held the licensee should be issued a provisional license. In *Kidzoo*, a nine-year-old child tricked his teacher into believing he was using the restroom, snuck out the front door, and hid behind bushes before heading home. The facility in *Kidzoo* reported the incident and the child was returned to the facility the same day, which the Court found was "clear evidence that the mother believed it was her son's conduct, rather than gross incompetence, negligence, or misconduct on the part of [the facility], that caused the violation." Slip op. at 12-13. The facility was not cited for any repeat violations, was never issued a provisional license, and only received citations for minor violations up until the incident in question. *Id.* at 12. The Court in *Kidzoo* held the facility established

13

it was in substantial compliance and was entitled to a provisional license and DHS erred by revoking its license and refusing to issue a provisional license. *Id*. at 13.

The Center has been in operation for over 40 years, and YMCA currently operates 30 other facilities that are in good standing with valid certificates of compliance. (FOF ¶¶ 1-2, 26.) The Center, in its 40-year history of operations, has only been cited for minor violations until the Incident. (*Id*. ¶ 4.) YMCA, indeed, is not a "problem facility," (YMCA's Br. at 25), with a history or pattern of violations. DHS's inspections on April 27, 2018, and June 28, 2018, which resulted in the violations and resultant revocation, stemmed from the single Incident; DHS did not cite any other violations during these inspections. As previously noted, neither the employee who mistreated the child nor the employee who witnessed the abuse and did not report it were in charge or supervisors; rather, the Incident was committed by a "traditional employee." *Aaron's*, 541 A.2d at 65. YMCA, once it learned of the Incident and the failure to report, reported the Incident immediately, fired the two employees, and took the necessary steps to insure its employees were aware of their duties. (FOF ¶¶ 11, 12.) YMCA further submitted correction plans immediately once it received the Revocation Notice. (*Id*. ¶ 23.)

There was no evaluation of the correction plans and no opportunity for YMCA to demonstrate that it could make the necessary changes, which would enable it to continue to provide services. We have stated that, "[c]ertainly, we would not expect [YMCA] or any other entity in this particular industry to maintain 100% compliance at all times during their respective operations[.]" *Lil Shining Stars*, 140 A.3d at 97. We do not minimize the seriousness of the Incident that occurred. Once fully informed of the Incident, YMCA has not minimized its seriousness and its remaining facilities continue to operate without incident. Given these facts, this case is

14

distinguishable from *Aaron's*, and DHS erred in finding it directly applicable. This case is more akin to *Kidzoo* where we found the facility was in substantial compliance and deserved a provisional license. Accordingly, DHS erred by revoking YMCA's license without considering it for a provisional license. For these reasons, the BHA's order is reversed.[9]

 

**RENÉE COHN JUBELIRER,** President Judge

---

[9] Given our disposition, it is unnecessary to address YMCA's other arguments.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harrisburg Area YMCA,       :
          Petitioner     :
                        :
        v.             :   No. 799 C.D. 2022
                        :
Department of Human Services,    :
          Respondent   :

## **O R D E R**

**NOW**, October 19, 2023, the Order of the Department of Human Services, Bureau of Hearings and Appeals, entered in the above-captioned matter, is **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** President Judge